remanded with instructions to grant the United States' motion for summary judgment and dismiss the suit.

REVERSED and REMANDED.

**William BRENNER and Sydney Koslow, Appellants,**

v.

**The UNITED STATES and Pitney Bowes, Inc., Appellees.**

**Appeal Nos. 85-653, 85-975 and 85-1919.**

United States Court of Appeals, Federal Circuit.

Sept. 18, 1985.

James P. Malone, Rockville Centre, N.Y., argued for appellants.

Jessie J. Jenner, Fish & Neave, New York City, argued for appellee Pitney Bowes. With him on brief was Lars I. Kulleseid and Robert J. Goldman.

Jerry H. Nelson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee U.S. With him on brief were Richard K. Willard, Acting Atty. Gen., and Vito J. DiPietro, Director. Thomas J. Byrnes, Civil Div., Dept. of Justice, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, DAVIS and SMITH, Circuit Judges.

MARKEY, Chief Judge.

Brenner and Koslow (Brenner) appeal from a grant by the United States Claims Court of Pitney Bowes, Inc.'s motion for summary judgment of non-infringement. We affirm.

## BACKGROUND

Brenner sued the United States,* alleging that the United States Postal Service (USPS) was infringing U.S. Patent Nos. 3,609,694 (the '694 patent) and 3,246,751 (the '751 patent). The patents disclose and claim a system for coding and sorting mail. The '694 patent claims a means for apply-

---

* The United States joined its supplier Pitney Bowes, Inc. as a third party defendant.

Brenner and the United States stipulated that the accused devices purchased by the United States "employ ink jet printers to apply bar codes to mail and have no other means to apply a code to mail." Because the judgment affirmed here rests on the finding that ink jet printers do not infringe the patents, that judgment would redound to the benefit of the United States.

ing an uncoded but "codable" piece of material, such as a magnetic, thermoplastic or electrostatic strip, to an article of mail. Address information is then imparted to the material, i.e., to code that material, as the article moves into "operative electrical engagement" with an electric recording device. The '751 patent claims a means for automatically sorting the mail to which the "electrostatically codable" material has been adhered.

During the prosecution of the '751 patent, Brenner amended the claims by changing the phrase "electrostatically coded" to read "electrostatically codable." Brenner remarked in a supplemental amendment that this change more accurately reflected the device "since when the material is placed on the mail it is not yet coded...." He made similar distinctions to overcome prior art rejections when prosecuting the parent application of the '694 patent. He stressed the importance of the applied material's erasability.

Defendant's allegedly infringing system is also used for mail coding and sorting. It, however, employs an ink jet printer which shoots ink toward a target surface directly on the article. The ink, i.e., the material applied, is not "codable". The ink droplets are deflected electrically to form a pattern corresponding to a desired bar pattern. That pattern is not erasable as are the adhesive strips in the '694 and '751 patents.

The Claims Court found that the accused system did not infringe the '694 patent because it lacked the "operative electrical engagement" set forth in the claims and is merely a printing system. The court also found that the accused system did not infringe the '751 patent because it lacked the "codable" material set forth in the claims, and it also lacked the erasable materials to which Brenner's claims must be limited by the patent's prosecution history.

## ISSUE

Whether the Claims Court erred in granting summary judgment of non-infringement.

## OPINION

As the Claims Court recognized, "[s]ummary judgment is as appropriate in a patent case as in any other" where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed. Cir.1984).

This court has upheld the granting of summary judgment motions in favor of accused infringers, where the claims do not "read on" the accused structure and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found. *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 225 USPQ 240 (Fed.Cir.1985); *Prodyne Enterprises, Inc. v. Julie Pomerantz, Inc.*, 743 F.2d 1581, 223 USPQ 477 (Fed.Cir.1984). The present case is of the same breed.

The trial court correctly determined that the claims of the '694 patent did not read on the accused system because that system had no "operative electrical engagement" and no "electrically responsive material" as specifically set forth in those claims. It properly rejected Brenner's unsupported and unsupportable assertion that the ink in the allegedly infringing device met those limitations. It is clear that the ink has no electrical engagement, and that when it shoots onto the mailing article, it has no electrical charge and is not electrically responsive.

The court correctly noted that Brenner's '694 specification teaches away from the printing system employed by USPS, and that Brenner's assertions in the prosecution history (that his inventions were improvements over ink coding) precluded his successfully arguing now that USPS's inking system is an equivalent of the inventions claimed in '694 patent. *See Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362, 219 USPQ 473, 481 (Fed.Cir. 1983).

**308**

Similarly, the court found that USPS's system lacked the "codable" material called for by the '751 patent claims, and correctly interpreted the scope of the claims of the '751 patent in light of its prosecution history. As above indicated, Brenner amended those claims to escape prior art, changing the description of the material from "electrostatically *coded*" to "electrostatically *codable*". That amendment constituted a prosecution history estoppel, precluding Brenner from successfully contending that USPS's system is an equivalent of the inventions claimed in the '751 patent. *See Kinzenbaw v. Deere & Co.*, 741 F.2d 383, 389, 222 USPQ 929, 933 (Fed.Cir.1984), *cert. denied* ── U.S. ──, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

USPS uses a mail coding and sorting system on which the claims cannot be read. It therefore avoids a literal application of the claims. Brenner is clearly estopped by his prosecution history from broadening the claims under the doctrine of equivalents to encompass USPS's system. The decision of the Claims Court granting Pitney Bowes' motion for summary judgment of non-infringement must therefore be affirmed.

AFFIRMED.