Bert O. JONSSON, Besam Ab and Besam, Inc., Plaintiffs–Appellants,

v.

The STANLEY WORKS,
Defendant–Appellee.

The STANLEY WORKS,
Plaintiff–Appellee,

v.

BESAM, INC., Defendant–Appellant.

No. 89–1550.

United States Court of Appeals,
Federal Circuit.

May 11, 1990.

Richard S. Clark, Brumbaugh, Graves, Donohue & Raymond, New York City, argued for plaintiffs-appellants. With him on the brief were James J. Maune and Robert C. Scheinfeld. Also on the brief were Albert J. Knopp and Thomas Shunk, Baker & Hostetler, Cleveland, Ohio, of counsel.

Peter L. Costas, Costas, Montgomery & Dorman P.C., Hartford, Conn., argued for defendant-appellee. With him on the brief were Ralph H. Chilton, Chilton, Alix & VanKirk, Hartford, Conn. and Christopher B. Fagan, Fay, Sharpe, Beall, Fagan, Minnich & McKee, of Cleveland, Ohio, of counsel.

Before MARKEY, Chief Judge, NEWMAN, Circuit Judge, and RE, Chief Judge.[*]

RE, Chief Judge.

Plaintiffs-appellants, Bert O. Jonsson, Besam AB, and Besam, Inc. (collectively Jonsson), appeal from an order of the United States District Court for the Northern District of Ohio (Lambros, J.), which granted the motion of defendant-appellee, The Stanley Works, for partial summary judgment of non-infringement of United States Patents Nos. 4,560,912, and 4,467,251, for automatic swing door opening systems. The district court certified the judgment under Rule 54(b), Fed.R.Civ.P. Jonsson contends that the district court erred in its determination that Stanley's Sentrex and Sentrex 2 automatic door opening systems do not infringe Jonsson's patents.

The question presented on this appeal is whether the district court erred in its determination that there are no genuine issues of material fact, and that Stanley's Sentrex and Sentrex 2 automatic door opening systems do not infringe Jonsson's United States Patents Nos. 4,560,912 (the '912 patent), and 4,467,251 (the '251 patent).

Since the district court committed no error in concluding that there are no genuine issues of material fact, and that Stanley's

[*] The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation pursuant to 28 U.S.C. § 293(a).

Sentrex units do not infringe the patents in suit, we affirm.

## BACKGROUND

In 1980, inventor Bert Jonsson filed United States Patent Application No. 155,008 (the '008 application), which contained 18 claims reciting an object sensor and an automatic door opening system. Claims 1–15 dealt specifically with the object sensor, and claims 16–18 dealt with the automatic door system. Claim 16 stated that the automatic door system uses radiation emitters that produce "a diverging beam of radiation in response to supplied electrical signals ... [and] radiation detecting elements for receiving radiation reflected from an object...." In the specification, Jonsson stated that the sensors and emitters utilize "diverging rather than focused beams of radiation...." Jonsson also stated that the "multiple emitters illuminate the object and multiple receivers detect the reflected signal[,]" and that "the sensitivity of the detectors is greatly reduced with distance as compared to focused beam illumination and detecting devices." The examiner, in an office action dated January 21, 1981, rejected all the claims of the '008 application as being unpatentable in view of the prior art.

Subsequently, Jonsson submitted an amendment to the '008 application. In the amended claim 16, Jonsson claimed that the radiation emitters produce "a diverging beam of *diffuse* radiation in response to supplied electrical signals...." (emphasis added). According to the amended specification, the sensors and emitters use "*a plurality of overlapping diverging light beams, forming diffuse light*, rather than focused beams of radiation...." (emphasis added). The amended specification noted that the "multiple emitters illuminate the object *with diffuse light* and multiple receivers detect the reflected *diffuse light*." (emphasis added). It also noted that "the sensitivity of the detectors is greatly reduced with distance *because of the diffuse nature of the illumination and detection,* as compared to focused

beam illumination and detecting devices." (emphasis added).

In his remarks accompanying the amendments, Jonsson distinguished his invention from the prior art, namely United States Patent No. 3,852,592 (the Scoville patent), by stating that "[a]n important distinction between the present invention and the Scoville disclosure is the fact that the present invention *uses diffuse light, originating from many sources,* to illuminate a region of space." (emphasis added). Jonsson explained that his "system requires the use of multiple emitters and multiple detectors, all radiating or receiving energy from the same region of space." According to Jonsson, "[u]nlike the Scoville systems, *the energy radiated is diffuse and an object must be illuminated by many emitters* and reflect energy into many detectors in order to develop sufficient energy at the detectors to indicate the presence of an object." (emphasis added).

Attached to Jonsson's amended '008 application were a group of hand-drawn diagrams of the "diffuse light" produced by the automatic door system. In his remarks, Jonsson stated that "[t]he final sketch on the enclosure illustrates the operation of the present invention wherein the existence of many emitters, preferably in a linear array, provides an illumination source which is best described as diffuse."

In a response to an action of the Patent and Trademark Office which rejected his amended application, Jonsson commented that the term "diffuse" "has been added in an effort to more accurately describe the nature of the illumination which is provided by the array of cooperatively acting light sources, which is described in this application." Jonsson defined "diffuse," from *Webster's Third New International Dictionary,* as "moving in many directions."

On February 10, 1982, the examiner allowed claims 16–18, which dealt with the automatic door opening system. These claims were made part of a continuation-in-part application of the '008 application, and eventually became claims 1–3 of Jonsson's '251 patent, which was granted on August 21, 1984.

Jonsson's '251 patent discloses an automatic door opening system that uses radiation emitters and sensors, located on both sides of the door, to indicate the presence of an oncoming person. The sensors transmit signals to a door control mechanism, which operates the opening of the door. The first claim of the '251 patent, which is the only independent claim, recites that the radiation emitters consist of "a plurality of elements, each for emitting a diverging beam of diffuse radiation in response to supplied electrical signals...." The radiation sensors are set forth in claim 1 as "a plurality of radiation detecting elements for receiving radiation reflected from an object, and a receiver connected to said detecting elements for providing an output signal representative of the presence of an object...."

On August 20, 1984, Jonsson filed a second continuation-in-part application from the '008 application. On December 24, 1985, this application was issued as Jonsson's '912 patent.

The claims of the '912 patent more broadly claim the object sensing apparatus of Jonsson's automatic door system. The '251 patent discloses "a plurality of elements" used for the emission and detection of radiation. In contrast, the first claim of the '912 patent, which is the only independent claim, sets forth that the object sensing apparatus has "means for emitting a diverging beam of diffuse radiation in response to a supplied electrical signal, means supplying an electrical signal to said emitting means, [and] radiation detecting means for providing an output signal representative of the presence of an object...."

Jonsson granted an exclusive worldwide license under the '251 patent to Besam AB, a Swedish corporation. Besam AB granted an exclusive United States license to its wholly owned subsidiary, Besam, Inc. Jonsson's automatic door operating system was marketed by Besam AB and Besam, Inc. as "Visionpulse."

Stanley's Sentrex and Sentrex 2 automatic door opening systems involve sensor units located on either side of the door. The Sentrex 2 consists of two sensor units, with one on each side of the door, while the Sentrex system has four sensor units, with two on each side of the door. Each of the sensor units used in Stanley's Sentrex systems has seven emitters and one detector, and each of the sensor units used in the Sentrex 2 systems has eight emitters and one detector.

In 1985, Jonsson filed a complaint against Stanley in the United States District Court for the Northern District of Ohio, alleging that the Sentrex and Sentrex 2 automatic door opening systems infringe Jonsson's '251 patent. Stanley counterclaimed, seeking a declaratory judgment that the '251 patent was invalid and not infringed. Stanley also filed a separate action, in the United States District Court for the District of Connecticut, seeking damages from Besam, Inc. for unfair competition, and a declaratory judgment that Jonsson's '912 patent is invalid, unenforceable, and noninfringed. The cases were consolidated before the district court in Ohio.

Contending that the Sentrex systems do not infringe the '912 and '251 patents, Stanley moved for partial summary judgment and the court granted Stanley's motion. See Jonsson v. Stanley Works, 711 F.Supp. 1395, 11 USPQ2d 1200 (N.D.Ohio 1989).

In its opinion, the district court set forth the claims of the '912 and '251 patents that are in issue, and extensively reviewed the prosecution history of Jonsson's patents. See Jonsson, 711 F.Supp. at 1399–1402. The district court then discussed Stanley's Sentrex devices, and stated that:

> The parties do not dispute that in the Sentrex units, the infrared emitters of all of the sensor units are pulsed, *one at a time, in pulse bursts* in a predetermined sequence. An emitter is pulsed on one side of the door, and then an emitter is pulsed on the other side of the door, so that operation alternates between the two sides of the door. During the operation of each emitter, *only one detector* (i.e., the detector mounted in the same sensor unit as the active emitter) is active in detecting reflected radiation.

Id. at 1402 (emphasis in original). The court stated that "Stanley asserts that by

regulating the range of each emitter, the size and shape of the total detection zone of each sensor unit is more precisely regulated than is the case with the Jonsson Visionpulse unit." *Id.* The court added that "[i]n contrast, the Visionpulse unit produces diffuse illumination over a large zone." *Id.*

On the issue of literal infringement, the court reviewed a deposition of Jonsson, the inventor named in the '912 and '251 patents, taken on January 29, 1986. In his deposition, Jonsson defined " 'diffuse light as light rays propagating in different directions, ... so the light is not emanating from one single point ... [but] [f]rom many different sources or many different points.' " *Id.* at 1404. He also specifically denied that a single light source could create "diffuse light." *See id.* The court determined that "[t]he prosecution history leads the Court to conclude that after the initial rejections by the Patent Office, [Jonsson] amended [the] claims to define the illumination as 'diffuse' and to emphasize the necessity for the simultaneous emission of diffuse light." *Id.* at 1406.

The court concluded that "Stanley's Sentrex units do not produce diffused light, which is the essence of Jonsson's invention." *Id.* at 1404. The court found that, in contrast to the system described by Jonsson's '912 patent, the Sentrex units "produc[e] only one narrow beam of light [and] ... contain[ ] only one detector to receive light." *Id.* Hence, the court concluded that the Sentrex systems do not literally infringe Jonsson's patents. *See id.* at 1407.

Nevertheless, Jonsson contended that summary judgment was inappropriate because "a jury should consider whether the doctrine of equivalents applies." *Id.* Because of the doctrine of "file wrapper estoppel," the court disagreed, and stated that the record indicated "that the term 'diffuse' in Claim 1 of both patents in suit was introduced to distinguish Jonsson's invention from the prior art." *Id.* at 1408. The court noted that "[a]s defined by ... Jonsson, 'diffuse' light required simultaneously provided electrical signals and a plurality of light sensing elements." *Id.* Hence, the court concluded that "[p]rosecution history estoppel precludes an effort by plaintiffs to claim as equivalents that which they specifically distinguished in their efforts to obtain allowance of their patents." *Id.*

The court held that there were no genuine issues of material fact, and that "[t]he patents, their prosecution history, and the briefs submitted to the Court, provide an adequate basis for decision of defendant's motion." *Id.* Accordingly, the court granted Stanley's motion for summary judgment on the issue on non-infringement. *See id.* at 1409.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). *See also Brenner v. United States,* 773 F.2d 306, 307, 227 USPQ 159, 160 (Fed.Cir.1985).

In ruling on a motion for summary judgment, "[t]he district court must view the evidence in the light most favorable to the nonmoving party, and any doubt as to the existence of issues of material fact must be resolved in favor of the party opposing the motion." *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1548, 5 USPQ2d 1779, 1782 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). Nevertheless, as this court has noted, "[t]o create a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1550 (Fed.Cir. 1988) (emphasis in original). Instead, the nonmovant's evidence must present a question of material fact, which requires submission to a jury. *See id.* On appeal, a grant of summary judgment will be upheld when there is no literal infringement, " 'and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found.' " *Townsend Eng'g Co. v. HiTec Co.,* 829 F.2d

1086, 1089, 4 USPQ2d 1136, 1139 (Fed.Cir. 1987) (quoting *Brenner,* 773 F.2d at 307, 227 USPQ at 160).

## DISCUSSION

On this appeal, Jonsson contends that there are "no fewer than nine instances of reversible error by the District Court." After analyzing each of Jonsson's contentions, we conclude that the district court committed no reversible error.

Jonsson's first argument is that "[i]n making a finding of file wrapper estoppel, the District Court improperly made its own and incorrect factual analysis of the prior art (Scoville), and thereby concluded that the prior art required a narrower construction of the term 'diffuse' than that specifically adopted by [Jonsson] in the [Patent and Trademark Office]."

Jonsson contends that the district court erred in its determination that Jonsson's '008 application differed from the Scoville patent because the "diffuse light" discussed by Jonsson "required simultaneously provided electrical signals and a plurality of light sensing elements." *Jonsson,* 711 F.Supp. at 1408. In support of his contention, Jonsson refers to column 3, lines 37–39, of the Scoville patent, which state that "[i]nstead of using a single emitter or sensor for sensing traffic on one side of a door, multiple sensors ... and/or emitters ... may be used." In addition, Jonsson notes that lines 37–45 of column 3 of the Scoville patent were specifically cited by the examiner in the denial of the original '008 application on the basis of unpatentability in view of the prior art.

■ In *Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985), this court stated that "the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *See also Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 136–37, 62 S.Ct. 513, 518–19, 86 L.Ed. 736, 52 USPQ 275, 279–80 (1942). The entire record of proceedings in the Patent and Trademark Office, including representations made to the Examiner that the invention is patentable, are included in the patent's prosecution history.

■ From a review of the file history of the '251 and '912 patents, it is clear that the "diffuse light" discussed by Jonsson refers to light emanating from multiple emitters. After his '008 application was initially denied, Jonsson amended the specification to set forth the emitters as "a plurality of overlapping diverging light beams, forming diffuse light...." In remarks accompanying the amendment, Jonsson distinguished his automatic door system from the system described in the Scoville patent, stating that "the present invention uses diffuse light, originating from many sources, to illuminate a region of space." Jonsson specifically noted that:

Scoville suggests at column 3, lines 37 to 45 [of the Scoville patent] that multiple emitters may be used. Such use of multiple emitters is to supplement the region covered by a single emitter and the illumination of an object in the control zone by multiple emitters is not required for operation of the system.

. . . . .

In contrast, applicant's system requires the use of multiple emitters and multiple detectors, all radiating or receiving energy from the same region of space.... Unlike the Scoville systems, the energy radiated is diffuse and an object must be illuminated by many emitters and reflect energy into many detectors in order to develop sufficient energy at the detectors to indicate the presence of an object.

Hence, Jonsson specifically distinguished his '008 application from the prior art on the basis of "diffuse light" and the presence of multiple emitters required to produce "diffuse light."

Nevertheless, Jonsson notes that his definition of "diffuse" in his response to the Patent and Trademark Office action on the amended application, which is the only definition of "diffuse" contained in the file history, did not require production from multiple sources. This definition, however,

cannot rebut Jonsson's clear explanation, in the prior remarks accompanying the amendments, that the "diffuse light" used in his automatic door system requires multiple emitters. Indeed, the response itself states that, in Jonsson's system, "illumination ... is provided by the array of cooperatively acting light sources...."

Furthermore, Jonsson's January 29, 1986 deposition confirms the need for multiple emitters in the production of "diffuse light." In his deposition, Jonsson "describe[d] diffuse light as light rays propagating in different directions," and noted that "diffuse light" is produced "[f]rom many different sources or many different points." He stated that "diffuse light" could not derive from a single source. From the foregoing it is clear that the district court did not err in its determination that Jonsson was estopped from asserting that his '912 patent was not limited to multiple emitters.

■ Jonsson's next argument is that "[t]he district court improperly relied upon [Patent and Trademark Office] arguments made in support of claims not in issue and having limitations absent from '912 patent claim 1." According to Jonsson, "the 'arguments and remarks' considered by the District Court to be so important were absolutely irrelevant to the allowance of any claim of the '912 patent, and were directed instead to claims having limitations glaringly absent from '912 patent claim 1."

In support of his contention, Jonsson notes that claim 1 of the '008 application sets forth "a plurality of radiation emitting elements ... collectively illuminating [the] region with overlapping diverging beams forming diffuse light...." He states that the '912 patent expressly deleted this language, and, in contrast, recited in claim 1 a "means for emitting a diverging beam of diffuse radiation...." Stanley, however, asserts "that the literal language of the claims of the patents in suit requires the simultaneous actuation of a multiplicity of spaced emitters to produce 'diffuse' light, and that the Stanley Sentrex units do not employ this principle of operation."

This court has noted that "arguments made during the prosecution history are relevant in determining the meaning of the terms at issue." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438, 7 USPQ2d 1129, 1135 (Fed.Cir.), *cert. denied*, —— U.S. —— 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). We have also stated that the prosecution history of a patent contains:

all express representations made by or on behalf of the applicant to the examiner to induce a patent grant.... Such representations include amendments to the claims and arguments made to convince the examiner that the claimed invention meets the statutory requirements of novelty, utility, and nonobviousness. Thus, the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.

*Standard Oil*, 774 F.2d at 452, 227 USPQ at 296.

Despite Jonsson's contentions, it is not disputed that the '912 patent, like the '251 patent, requires the use of "diffuse light." The '912 patent is the result of a continuation-in-part application from the original '008 application, which led to the '251 patent. Hence, the prosecution history of the '251 patent and the construction of the term "diffuse light" contained in that patent, is relevant to an understanding of "diffuse light" as that term is used in the '912 patent. Consequently, as to "diffuse light" in its interpretation of the '912 patent, the district court did not err in relying on "arguments and remarks" made during the prosecution of the '251 patent.

■ Jonsson's third argument is that "[d]espite the fact that claim 1 of the '912 patent was amended to delete the requirement for multiple emitters and multiple detectors, the District Court construed this claim as having exactly the same scope as '251 patent claim 1 which retained this requirement." The district court had determined that "[t]he Examiner, by allowing the use of 'means' rather than 'plurality of

elements' did not indicate that he had accepted any change in what generated the 'diffuse' light defined in the claims." *Jonsson,* 711 F.Supp. at 1407.

Paragraph 6 of 35 U.S.C. § 112, as amended, provides that limitations "expressed as a means ... for performing a specified function without the recital of structure ... in support thereof, ... shall be construed to cover the corresponding structure ... described in the specification and equivalents thereof." In paragraph 6, Congress sought to provide instruction on the interpretation of "means" claims, "which otherwise might be held to be indefinite." *Data Line Corp. v. Micro Technologies, Inc.,* 813 F.2d 1196, 1201, 1 USPQ2d 2052, 2055 (Fed.Cir.1987); *see also Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386 (Fed.Cir.1989). Paragraph 6 "operates to *cut back* on the type of *means* which could literally satisfy the claim language." *Id.* (emphasis in original). More specifically, "where a claim sets forth a means for performing a specific function, without reciting any specific structure for performing that function, the structure disclosed in the specification must be considered, and the patent claim construed to cover both the disclosed structure and equivalents thereof." *Data Line,* 813 F.2d at 1201, 1 USPQ2d at 2055.

Claim 1 of the '251 patent sets forth "a plurality of elements, each for emitting a diverging beam of diffuse radiation...." In contrast, claim 1 of the '912 patent recited a "means for emitting a diverging beam of diffuse radiation...." Claim 1 of the '912 patent, however, is to be construed in light of the specifications of the '912 patent and the '251 patent, of which the '912 patent is a continuation-in-part. The '912 patent specification, in column 2, lines 60–62, describes "an apparatus for sensing objects which includes a plurality of radiation emitting elements...." The specification also states, in column 3, lines 4–7, that "[t]he transmitting and receiving elements are preferably arranged with equal spacing along respective straight lines and interspersed with each other." Similarly to the '912 patent specification, claim 1 of the '251 patent is strictly limited

to radiation emission consisting of "a plurality of elements, each for emitting a diverging beam of diffuse radiation...."

In addition, the amendments to Jonsson's original '008 application indicate that the use of multiple emitters is necessary for the production of "diffuse light." Indeed, the remarks accompanying the amendments distinguished the Scoville patent on the basis of the requirement for multiple emitters, and the production of "diffuse light." Similarly, Jonsson's deposition testimony confirms the need for multiple emitters in Jonsson's patented devices. Clearly, therefore, the district court did not err in its determination of the scope of the '912 patent.

▪ Jonsson's fourth argument is that "[t]he district court expressly and improperly disregarded the only definition of 'diffuse' presented to the [Patent and Trademark Office] in support of the claims in issue."

We have noted that "[a]lthough a patentee may be his own lexicographer, the patent specification must support his asserted definition." *Constant v. Advanced Micro–Devices, Inc.,* 848 F.2d 1560, 1571, 7 USPQ2d 1057, 1064 (Fed.Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). Furthermore, "[t]erms of a claim must be interpreted with regard to the other claims, the specification and the prosecution history." *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1056, 5 USPQ2d 1434, 1442 (Fed.Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

In this case, Jonsson frequently described "diffuse light" as requiring the use of multiple emitters. In his remarks accompanying his '008 application, Jonsson stated that his automatic door system "uses diffuse light, originating from many sources," and "requires the use of multiple emitters and multiple detectors, all radiating or receiving energy from the same region of space." Similarly, in his deposition, Jonsson stated that "diffuse light" involves "light rays propagating in different directions...." He also specifically denied

that "diffuse light" could be produced by a single emitter.

The submitted definition of "diffuse," as "moving in many directions," does not refute or change Jonsson's prior descriptions of "diffuse light" as requiring the presence of multiple emitters. Hence, the district court did not err in determining that Jonsson's definition of "diffuse," contained in the response to the Patent and Trademark Office action on his amended application, failed to establish that his '912 patent was not limited to an automatic door system using multiple radiation emitters.

Jonsson's fifth argument is that "[t]he district court expressly disregarded the language of other claims in construing '912 patent claim 1." Specifically, Jonsson contends that, under the doctrine of "claim differentiation," the court erred in determining that the '912 patent requires the use of multiple radiation detectors, since that requirement is not found in claim 1 but in dependent claim 9. If the district court erred in this regard, the error was harmless, for we have already concluded that the district court did not err in determining that, on the basis of the prosecution history, the '251 patent, the '912 patent specifications, and the deposition testimony of Jonsson, the '912 patent requires the use of multiple emitters. Hence, since it is apparent that the court had ample evidence to determine the scope of the '912 patent, Jonsson's reliance on claim differentiation requires no discussion.

Jonsson's sixth argument is that, "[i]n determining the mode of operation of the Sentrex units, the district court made findings of fact as to disputed issues, and based its findings on erroneous standards." Jonsson contends that "[a] clearly genuine issue as to a material fact exists as to whether the light beams emitted by the Stanley Sentrex units are wide (moving in many directions and thus 'diffuse') or narrow."

Whether the Sentrex beams are wide or narrow, however, is not a material fact "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986). Moreover, in determining that the Sentrex units did not produce "diffuse light," the district court chiefly relied on a demonstration of the Sentrex machines performed at the hearing. The demonstration showed that Stanley's Sentrex devices employed multiple emitters which pulsed one at a time, producing beams of light. In contrast, the '251 and '912 patents indicate that, in Jonsson's invention, "diffuse light" is created by simultaneous pulses of light produced by multiple emitters. During the demonstration, Jonsson contended that the Sentrex's separately flashing emitters produced "diffuse light." According to Jonsson, the Sentrex emitters were "flooding the light, going in different directions to get the diffuse illumination."

In order fully to understand the demonstration, the district court viewed the Sentrex system through a device, similar to a sniperscope, which permits the viewing of infrared light. Based on this extensive demonstration, and the undisputed differences in the light emission system of the Sentrex machines and Jonsson's patents, Jonsson has not shown that any genuine issue of material fact would undermine the determination that Stanley's Sentrex machines do not produce "diffuse light."

■ In his seventh argument, Jonsson asserts that "[t]he district court's reliance upon Mr. Jonsson's deposition testimony was improper."

In determining the meaning of patent claims, "[w]ords in a claim 'will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently.'" *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984) (quoting *Universal Oil Prods. Co. v. Globe Oil & Refining Co.,* 137 F.2d 3, 6, 58 USPQ 504, 508 (7th Cir.1943), *aff'd,* 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399, 61 USPQ 382 (1944)).

In *Chicago Steel Foundry Co. v. Burnside Steel Foundry Co.,* 132 F.2d 812, 814–15, 56 USPQ 283, 286 (7th Cir.1943), the Court of Appeals for the Seventh Circuit noted that:

a patentee may be his own lexicographer and ..., his own grammarian. All he need do is to convey his thoughts, in his own language, but somehow make his invention clear, and do so in such a way that his counsel cannot give a different meaning to his words, before the Patent Office than he does before the courts. He should not be allowed to stretch his words so that they are inclusive when infringement is being considered and restricted and narrowed when validity is challenged by disclosures of the prior art.

Hence, the district court did not err in relying on Jonsson's deposition in determining that "diffuse light," as that term had been used by Jonsson in his '251 and '912 patents, required the use of multiple radiation emitters.

Jonsson's eighth contention is that "[t]he addition of a microwave sensor to the Stanley Sentrex 2 is irrelevant to the issue of infringement." Jonsson contends that, while the district court did not expressly rely on this conclusion in its decision, "Stanley has at least contended and may contend on appeal that this additional feature avoids ... '912 patent claim 1...." Since the district court did not specifically distinguish the Sentrex machines from the '912 patent on this issue, and since there are other grounds on which the Sentrex machines and the '912 patent claims may be distinguished, we do not address this issue.

Jonsson's ninth and final assignment of error is that "[t]here are genuine issues of material fact as to the issue of infringement under the doctrine of equivalents."

■ Under the "doctrine of equivalents," "an accused product that does not literally infringe a structural claim may infringe 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Townsend Eng'g Co.,* 829 F.2d at 1090, 4 USPQ2d at 1139 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950)). The determination of infringement under the doctrine is a question of fact.

*See id.* 829 F.2d at 1089, 4 USPQ2d at 1138 (citing *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 856–57, 85 USPQ at 331).

■ It is well established, however, that "[t]he doctrine of equivalents ... is limited by prosecution history estoppel, which 'limits a patentee's reliance on the doctrine of equivalents by preventing him from contending later in an infringement action that his claims should be interpreted as if limitations added by amendment were not present....'" *Id.* 829 F.2d at 1090, 4 USPQ2d at 1139 (quoting *Thomas & Betts Corp. v. Litton Sys., Inc.,* 720 F.2d 1572, 1579, 220 USPQ 1, 6 (Fed.Cir.1983)). *See also E.I. du Pont de Nemours,* 849 F.2d at 1438, 7 USPQ2d at 1135; *Hi-Life Prods., Inc. v. American Nat'l Water–Mattress Corp.,* 842 F.2d 323, 325, 6 USPQ2d 1132, 1134 (Fed.Cir.1988).

We have already determined that the district court did not err in its determination that Jonsson is estopped from asserting that his '912 patent is infringed by Stanley's Sentrex devices. Hence, Jonsson's equivalency argument has no merit.

## CONCLUSION

The district court did not err in its determination that there are no genuine issues of material fact, and that Stanley's Sentrex and Sentrex 2 automatic door opening systems do not infringe Jonsson's '251 and '912 patents. Accordingly, the decision of the district court is affirmed.

AFFIRMED.