THE BRAUN CORPORATION, An
Indiana Corporation, Plaintiff,

v.

MAXON LIFT CORPORATION,
et al., Defendants.

No. 4:01CV0076.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 11, 2003.

Charles V. Vaughan, Charles R. Vaughan, Linda H. Havel, Vaughan and Vaughan, Lafayette, IN, Vincent O. Wagner, Lisa A. Hiday, Woodard Emhardt Naughton, Moriarty and McNett, Indianapolis, IN, Charles A. Laff, Martin L. Stern, Perry J. Hoffman, Adam C. Smedstad, Michael Best and Friedrich, Chicago, IL, for plaintiff/counter-defendant.

Michael D. Beck, Harold C. Moore, Maginot Moore and Bowman, Indianapolis, IN, Ronald S. Katz, Robert D. Becker, Eugene L Hahm, Manatt Phelps & Phillips, Palo Alto, CA, for defendant/counter-claimant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This action involves two U.S. patents assigned to Plaintiff, The Braun Corporation, ("Braun"): U.S. Patents Nos. 6,238,-169 ("169") and 6,464,447 ("447"). This is an action for patent infringement arising out of Maxon Lift Corporation's ("Maxon"), alleged infringement of Braun's 169 and 447 patents in violation of the patent laws of the United States, 35 U.S.C.

§§ 271 and 281–285. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338(a)

On June 2, 2003 the parties simultaneously moved for summary judgment on the issues of validity and infringement. Oral argument was heard in this matter on August 22, 2003, in Lafayette, Indiana. This matter is before the Court on Braun's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure that 1) Maxon Lift Corporation's, WL–6A wheelchair lift ("WL–6A" or "accused product") infringes Braun's U.S. Patents Nos. 6,238,169 ("169") and 6,464,-447 ("447"); and 2) the patents-in-suit are not invalid as Maxon alleges. For purposes of this motion, only claim 1 of each patent-in-suit is being considered to establish infringement.[1] Braun, however, is not waiving its right to pursue other claims of the patents-in-suit if necessary. Maxon is liable for patent infringement if a single claim is infringed. *See, Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329 (Fed. Cir.1987).

Maxon, pursuant to its own motion, moves for summary judgment on multiple grounds. First, Maxon claims that the accused product does not fall within the scope of any valid claim of the 169 or 447 patents. Maxon claims that the push arm of the accused product, unlike the Braun push arm, which is telescoping, is a prior art rigid push arm. Further, Maxon alleges that unlike the prior art Braun device, the accused product includes a barrier/bridge plate with a nonlinear channel and a bolt that travels through the slot to raise and lower the barrier/bridge plate. And moreover, Maxon claims that unlike the patents-in-suit, the accused lift does not have a locking pin on the mounting block. Second, Maxon alleges that Braun's infringement action has become

moot. Maxon supports this contention with the assertion that Braun has failed to supply any computation or evidence of damages and moreover that Maxon has abandoned the accused product and has no intention of reintroducing it.

A motion to strike the declaration of Barry E. Wolff in support of Braun's motion for summary judgment was also filed by Maxon. Maxon argues that Mr. Wolff is attempting to provide expert testimony regarding Maxon's WL–6A Wheelchair Lift, the product accused of infringing U.S. Patents Nos. 6,238,169 ("the 169 patent"), and 6,464,447 ("the 447 patent"), in violation of established federal law differentiating lay opinion from expert opinion. Maxon contends that Mr. Wolff is a lay witness and his Declaration improperly intrudes on an area which is properly addressed only by expert opinion. However, Braun argues that Mr. Wolff's testimony is admissible under both Rule 701 and 702 of the Federal Rules of Evidence.

 Rule 701 of the Federal Rules of Evidence allows for opinion testimony by a lay witness. In its most basic form, Rule 701 allows lay opinion testimony that is based on the witness's personal perception. Moreover, the Seventh Circuit allows lay opinion testimony based on a witness's specialized knowledge obtained in his or her vocation or avocation. *U.S. v. Sweeney*, 688 F.2d 1131, 1145 (7th Cir. 1982). The decision whether lay testimony meets the criteria of Rule 701 is one committed to the discretion of the trial court. *Gorby v. Schneider Tank Lines*, 741 F.2d 1015, 1021 (7th Cir.1984). Maxon claims however, that Wolff goes far beyond what is allowed by Rule 701.

 Mr. Wolff's extensive personal experience in the wheelchair lift field gives

---

**1.** Maxon's motion for summary judgment pertains to all the claims in the patents-in-suit, while Braun's motion pertains to only claim 1 of each patent.

him specialized knowledge to support his testimony about his patented invention and Maxon's accused product and how it works. Mr. Wolff has been involved in this field (wheelchair lifts) for sixteen years and has a Bachelor of Science degree in Industrial Technology and Applied Sciences and is an inventor of the patents-in-suit. This specialized knowledge of wheelchair lift technology and personal examination and study of Maxon's accused device permit him to testify on the structure and function of the patented invention, Maxon's accused wheelchair lift, and other technical issues. Furthermore, it has been held that an inventor is a competent witness to explain the invention and what was intended to be conveyed by the specifications and covered by the claims. *See Voice Techs. Group, Inc., v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed.Cir.1999); *see also, Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed.Cir. 2001). This Court deems Mr. Wolff's opinion to be rationally based on his personal perception and finds such to be helpful in the determination of the fact(s) in issue. For these reasons, Mr. Wolff's testimony is admissible and Maxon's motion to strike the Declaration of Barry E. Wolff, is hereby, **DENIED.**[2]

## I. Background

### A. The 169 Patent

The 169 patent issued on May 29, 2001 and has been assigned to Braun. The patent contains 30 claims, but only claim 1 is at issue here. However, Maxon's motion for summary judgment pertains to all the claims in the patents-in-suit, while Braun's motion pertains to only claim 1 of each patent. The invention of the 169 patent-in-suit related to an improved safety barrier mechanism. Wheelchair lifts are used to provide access to motor vehicles and the like for people who are wheelchair bound. Safety barriers located at the outboard, away from the vehicle, and inboard, closest the vehicle, ends of the platform are raised during platform movement to prevent a wheelchair from accidentally rolling off the platform and are lowered to act as ramps to facilitate movement of a wheelchair onto and off of the platform. When the wheelchair platform rests on the ground, the outboard barrier is lowered to provide a ramp onto the platform and the inboard barrier is raised to act as a stop. During lifting or lowering of the platform, both barriers are raised to act as stops to prevent a wheelchair from rolling off either end of the platform. When the platform is raised to the height of the vehicle floor, the outboard barrier remains raised to act as a stop and the inboard barrier is lowered to provide a ramp between the platform and the vehicle floor. Braun invented and patented an improved mechanism to automatically raise and lower the inboard safety barrier. In past, cables were used to raise and lower the inboard safety barrier, however, to overcome some of the disadvantages posed by these cables, Braun developed a linkage system in place of cables to actuate the inboard safety barrier in response to the operation of the lift.

In essence, claim 1 of the 169 patent, calls for a wheelchair lift comprising a support platform that is attached to the lifting mechanism for moving the platform

---

**2.** Braun also claims that Mr. Wolff's testimony is admissible under Rule 702 of the Federal Rules of Evidence. Braun argues that based on Wolff's knowledge, skill, experience, and education that his testimony is also admissible under Rule 702. However, because both parties primarily focus their arguments around Rule 701, and because this Court was able to base its decision on such, this Court felt it unnecessary to delve into a Rule 702 analysis, although such has been recognized as cognizable and was not in any way simply abandoned.

between ground level, a transfer level position and a vertically stowed position, and back. One end of the lifting mechanism is attached to the platform and the other end is attached to the vehicle. The upper part of the lifting mechanism is in the form of a parallelogram and the lower part of the lifting mechanism includes an articulated lever assembly. The parallelogram actuates the articulated lever assembly to pivot the wheelchair platform from the horizontal transfer level position to a vertically stowed position.

## B. The 447 Patent

Patent 447 was filed on May 25, 2001, as a continuation of the 169 patent application. The 447 patent issued on October 15, 2002. The 447 patent has the same inventors and differs from the 169 patent only in the manner in which it claims the subject wheelchair lift invention. The 447 patent has 37 claims, but only claim 1 is at issue in the present motion. However, Maxon's motion for summary judgment pertains to all the claims in the patents-in-suit, while Braun's motion pertains to just claim 1 of each patent. Claim 1 of the 447 patent calls for a wheelchair lift comprising essentially the same structure as claim 1 of the 669 patent, but using somewhat different language. The inboard end of a wheelchair platform is connected to a lifting mechanism which includes a parallelogram structure securable to a vehicle. The lifting mechanism moves the platform between ground level, transfer level, and a vertically stowed position, and back. Unlike claim 1 of the 669 patent, claim 1 of the 447 patent does not recite a lever mechanism to lower the inboard barrier plate. Instead, claim 1 of the 447 patent only calls for the articulated lever assembly to be linked to the barrier plate, without specifying the nature of the link.

## II. Standard of Review

Summary judgment in favor of those accused of infringement is appropriate where there is no genuine issue of material fact, the trial court has properly construed the claims, and a finding of infringement would be impossible. *Porter v. Farmers Supply Service,* 790 F.2d 882, 884 (Fed. Cir.1986) (affirming summary judgment of noninfringement); *Brenner v. United States,* 773 F.2d 306, 307 (Fed.Cir.1985). Summary judgment is appropriate in patent cases where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law. *Id.* Claim interpretation is a matter of law, and a dispute respecting that legal issue does not preclude summary judgment. *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651 (Fed.Cir.1984). Claim construction is a matter of law, exclusively within the province of the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Disputes about claim construction do not preclude summary judgment. *Molinaro,* 745 F.2d at 654. The Court must presume that the terms in the claim mean what they say, and unless otherwise compelled, give full effect to the ordinary and accustomed meaning of the claim terms. *Johnson Worldwide Assocs., Inc., v. Zebco Corp.,* 175 F.3d 985, 989 (Fed.Cir.1999).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.,* 164

F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56. A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Services.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however is that it did not tinker with *Celotex* and *Anderson.* The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir.1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir.1999)(*citing Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505.

Summary judgment is not a disfavored procedural shortcut, but rather is intended to avoid a useless trial, and is appropriate where it is quite clear what the truth is. *Babrocky v. Jewel Food Co. Retail Meatcutters*, 773 F.2d 857, 861 (7th Cir.1985). Applying the above standards, this Court will not address the present motions for summary judgment.

### III. Analysis

◼◼◼ Determining patent infringement requires determining whether an individual without authority makes, uses, offers to sell, sells, or imports the patented invention within the United States, its territories, or its possessions, during the term of the patent. 35 U.S.C. § 271(a). Patent infringement may be established through literal infringement analysis or through the doctrine of equivalents.[3] *Mas–Hamilton Group v. LaGard Inc.*, 156 F.3d 1206, 1211 (Fed.Cir.1998). A finding of infringement requires a two-step analytical approach. First, the claims of the patent must be construed as a matter of law to determine their proper scope. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). Second, a factual determination must be made as to whether

---

**3.** In this motion, Braun has not asserted the doctrine of equivalents and therefore such will not be discussed by this Court.

the properly construed claims read on the accused product. *Id.* To prove infringement Braun must show that every limitation in claim 1 of each patent is literally met by the accused product. *See Day Int'l Inc., v. Reeves Bros. Inc.,* 260 F.3d 1343, 1349 (Fed.Cir.2001).

When deciding whether a party has infringed a patent, the Court must first construe the claims of the patent and then compare the allegedly infringing device to the scope and meaning of the claims as determined by the Court. *Genentech, Inc. v. Wellcome Found. Ltd.,* 29 F.3d 1555, 1560 (Fed.Cir.1994). It is within the Court's jurisdiction to construe the claims of the patent, as the Supreme Court has affirmed that claim construction presents questions of law that are to be determined by the Court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577, (1996). When the Court construes the claims of the patents in question, the Court determines what is covered by the patents by examining the patents' claims, specifications, and prosecution histories.

The purpose of construing the claims of a patent is to determine the meaning and scope of the patent claims that the plaintiff is asserting have been infringed. *Markman* 52 F.3d at 979. The focus of the court when it construes a disputed claim term is not the subjective intent of the parties when they employed a certain term, but the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean. *Id.* at 986. When the court undertakes its duty of construing the claims, it must first look to intrinsic evidence: the claims, the specification and the prosecution history. *Markman,* 52 F.3d at 979. The claims " 'particularly point out and distinctly clai[m] the subject matter which the applicant regards as his invention.' " *Markman,* 517 U.S. at 373,

116 S.Ct. 1384, (*citing* 35 U.S.C. § 112). When construing claims, the appropriate starting point for the court's inquiry is always with the words of both the asserted and nonasserted claims. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998); *see also, Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed.Cir.1998).

It is the claim, not the specification, that defines the scope of the patent and accordingly, the patentee's rights. *York Products, Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572 (Fed.Cir.1996); *Markman,* 52 F.3d at 970–71. As the Federal Circuit has recently noted, "[a]bsent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning." *Renishaw,* 158 F.3d at 1249. Claims must be read in light of the specification. *Markman,* 52 F.3d at 979. However, the Federal Circuit has made clear that limitations from the specification may not be read into the claims. *Comark,* 156 F.3d at 1186 (citing *Sjolund v. Musland,* 847 F.2d 1573, 1581 (Fed.Cir.1988)). The court should not limit the invention to the specific examples or preferred embodiment found in the specification. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1563 (Fed.Cir.1986). Thus, the "repetition in the written description of a preferred aspect of a claim invention does not limit the scope of an invention that is described in the claims in different and broader terms." *Laitram Corp. v. NEC Corp.,* 163 F.3d 1342, 1348 (Fed.Cir.1998). Furthermore, the court cannot interpret the meaning of a word found in a claim by adding an extraneous limitation found in the specification. *Id.* There is a fine line between reading a claim in light of the specification and reading a limitation from the specification, and the court must cau-

tiously look to the specifications for assistance in defining unclear terms instead of assistance in limiting terms. *Comark*, 156 F.3d at 1186–87; *See generally, Trilithic, Inc. v. Wavetek U.S., Inc.*, 64 F.Supp.2d 816 (S.D.Ind.1999).

## A. Literal Infringement

 Braun has alleged literal infringement and thus the question of infringement rests on one of claim interpretation which is amenable to summary judgment. *See, Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (1984). Infringement generally exists if any one of a patent's claims covers the alleged infringer's product or process. *Markman*, 517 U.S. at 374, 116 S.Ct. 1384. Whether a patent claim covers an alleged infringer's product or process requires two steps: Claim interpretation, which is a matter of law, then whether the alleged product or process actually infringes the claim, which is a question of fact. *Id.* For literal infringement, *every* limit set forth in the claim must be found in an accused product, *exactly*. *Southwall Techs., Inc., v. Cardinal IG Co.*, 54 F.3d 1570 (Fed.Cir.1995). There can be no infringement if any claim element is missing from an accused product. *Id.* at 1575. There is literal infringement if each properly construed claim element "reads on" the accused product. *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed.Cir.2000).

The cardinal rule is to begin, as with all claim interpretation analyses, with the language of the claims. The Court looks to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Braun argues that when the words of claim 1 of both the 169 and 447 patents are given their ordinary and accustomed meaning, the claims literally read on Maxon's accused device.

Maxon's primary defense to infringement is based on their argument that all of the claims are limited by a telescoping push arm. Maxon argues that the accused product does not use a variable length, telescoping push arm, but instead uses a prior art rigid strut that is outside the scope of the claims. Maxon claims that Braun expressly and intentionally disclaimed any coverage of non-telescoping arms by differentiating the lifts covered by the patents-in-suit from the prior art, and because Maxon's accused lift does not have a telescoping arm, there can be no other conclusion but that the accused lift does not infringe the patents-in-suit.

Braun claims that the telescoping push arm limitation is expressly added by certain narrow dependent claims, which are not asserted here. Braun alleges that claim 1 of each patent-in-suit calls for an "articulated lever assembly," not a telescoping push arm. Braun further argues that reading the telescoping arm into claim 1 would improperly limit the patents-in-suit to the preferred embodiment disclosed in the specification. *RF Delaware Inc., v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1264 (Fed.Cir.2003). In short, Braun argues that to limit claim 1 of the patents-in-suit to a telescoping push arm as Maxon urges, would, improperly rewrite independent claim 1 to include a limitation expressly added by dependent claims and write such dependent claims out of the patents. Braun adds that nothing in the claims, specifications, or prosecution histories of the patents-in-suit limit independent claim 1 of either patents to a wheelchair lift that uses a telescoping push arm. They claim that to the contrary, the telescoping push arm limitation is added by narrower dependent claims in each patent. Braun, therefore moves Maxon's infringement defense be rejected as a matter of law.

Maxon argues however, that rigid push arms, as used in the accused product, were excluded from the scope of the invention and that therefore, literal infringement cannot exist. Maxon suggests that Braun expressly disclaimed any coverage of non-telescoping arms by differentiating lifts covered by the patents-in-suit from prior art, and because Maxon's accused lift does not have a telescoping arm, there can be no infringement.

■■■ The heart of this dispute lies in the language and interpretation of the patents-in-suit. Braun declares that under a broad reading of claim 1, the telescoping push arm cannot be read into claim 1 and that because it cannot, literal infringement exists. However, Maxon argues that because the telescoping push arm is in the description and moreover because the rigid strut which is used in the accused product is disclaimed that infringement cannot exist.

■■■ Claims must be read in view of the specification of which they are a part. Claims are to be construed in light of the specifications and both are to be read with a view to ascertaining the invention. *Markman*, at 979–80. As this Court has previously explained, "[o]ne purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed.Cir.2000). Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question. *See, SciMed Life Systems v. Advanced Cardiovascular*, 242 F.3d 1337 (Fed.Cir.2001).

■■■ Under the section of the patents-in-suit entitled "The Invention," more spe-

cifically, "Summary, Objects and Advantages," both patents read in pertinent part:

> The push arm of the invention, unlike the prior art push arms which are rigid struts, is a telescoping, variable length arm, compromising an upper member telescoping over a lower member.

This language defines Braun's patents-in-suit in a way that excludes or disclaims the rigid struts, which is precisely the arm used in the accused product. The Court in *Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed.Cir.1999) explained that when the preferred embodiment is described as the invention itself, the claims are not entitled to a broader scope than that embodiment. An example of this was illustrated by the *Watts* Court which found that the specification actually limited the invention to structures that utilized misaligned taper angles and that in light of such limitation, the court construed the claim language as limited by the same misaligned taper angles. *Watts* at 883; *see also, SciMed* at 1341.

Braun submitted supplemental authorities in support of their motion for summary judgment which this Court considered carefully. This supplemental authority consisted of two recent opinions surrounding this very topic. *See, Sunrace Root Enterprise Co., Ltd. v. SRAM Corporation*, 2003 U.S.App. LEXIS 14338 (July 17, 2003), 336 F.3d 1298, 67 U.S.P.Q.2d 1438 (Fed.Cir.) and *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360 (Fed.Cir.2003). In each case, the Court of Appeals rejected the accused infringer's argument that limitations describing a preferred embodiment should be read into a claim that used language broader than the preferred embodiment. In *Sunrace*, it was held that the intrinsic evidence did not narrow the term to a device containing a cam, however, in the matter

before this Court the intrinsic evidence appears to do just that, by narrowing the push arm to one that is telescopic, and furthermore, disclaims the prior rigid struts used in the accused product. Moreover, the facts in *Resonate* differ from the matter at hand due to the fact that the district court construed and inferred a limitation that was not apparent from the language. In the present case the Court is doing no such thing, but rather is simply considering the specifications already established by the patents-in-suit.

Braun argues that the disclaimer pertains merely to the preferred embodiments of the patents-in-suit and that therefore such should not be considered. However, as Maxon argues, the patents describe the invention as including a telescoping push arm and excluding prior art rigid arms. The language expressly directed to all embodiments of "the Invention" appears before the description of preferred embodiments of the invention which appear in the subsequent section entitled "detailed description of the best mode for carrying out the invention." In the present case, Braun characterized "the Invention" in a specific limiting way, as including a telescoping push arm, and possibly more importantly, as excluding prior art rigid strut push arms.[4] *See, Wang Labs., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382 (Fed.Cir. 1999). Under these circumstances, the claims cannot be extended to cover Maxon's accused design which uses the very same prior art rigid push arm that was disclaimed.

Braun expressly disclaimed any coverage of non-telescoping arms by differentiating the lifts covered by the patents-in-suit from the prior art, and because Maxon's accused lift does not have a telescoping arm, but rather employs the prior art rigid strut push arm, there can be no other conclusion but that the accused lift does not infringe the patents-in-suit. There can be no infringement if any claim element is missing from an accused product. *Southwall Techs., Inc., v. Cardinal IG Co.,* 54 F.3d 1570 (Fed.Cir.1995).

**B. Invalidity Defense**

■ Braun argues that there is a statutory presumption of validity that attaches to a patent under 38 U.S.C. § 282. This presumption is bolstered by the Federal Circuit's statement that the Trademark and Patent Office is presumed to have performed its job properly when it issued a patent. *See Superior Fireplace Co. v. Majestic Prods. Co.,* 270 F.3d 1358, 1367 (Fed.Cir.2001); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed.Cir.1984). Patent examiners are assumed to have experience in interpreting the references and to be familiar from their work with the level of skill in the applicable art. *See, The Lockformer Co. v. PPG Industries, Inc.,* 264 F.Supp.2d 622 (N.D.Ill.2003). Such is likewise presumed in this matter. Furthermore, this Court sees no need to perform a full invalidity analysis in this case. As has been discussed in great detail above, this Court has already concluded that the accused product does not infringe the patents-in-suit. It is unnecessary then to perform an invalidity analysis. Therefore, this Court will preserve the presumption of patent validity in this case and reject

---

**4.** The doctrine of claim differentiation creates only a presumption. "Claim differentiation does not serve to broaden claims beyond their meaning in light of the specification ... and does not serve to override clear statements of scope in the specification and the prosecution file history." *See, Toro Co. v. White Consolidated Industries, Inc.,* 199 F.3d 1295 (Fed.Cir. 1999); *see also, Fantasy Sports Props., Inc., v. Sportsline.com Inc.,* 287 F.3d 1108, 1115–16 (Fed.Cir.2002).

Maxon's request that we find the claims of the 169 and 447 patents invalid. *See, Midwest Canvas Corp. v. Cantar/Polyair Corp.*, 2003 WL 22053582 (N.D.Ill.2003).

### IV. Conclusion

Based on the foregoing, the undisputed facts before this Court show that Maxon did not infringe Braun's 169 and 447 patents. Accordingly, Maxon is entitled to a declaration as a matter of law that they did not infringe. Therefore, summary judgment is **GRANTED** in favor of Maxon, holding that in this matter infringement does not exist, thereby dismissing the present action in its entirety. Furthermore, such determination leads to the conclusion that Braun's motion for summary judgment of infringement is therefore **DENIED**. Each party will bear its own costs. **IT IS SO ORDERED.**