SPECTRA CORPORATION and Subligraphics, S.A., Plaintiffs–Appellants,

v.

Charles J. LUTZ, dba Nova Chrome and Lutz Enterprises, Inc., Defendants–Appellees.

No. 87–1461.

United States Court of Appeals, Federal Circuit.

Feb. 24, 1988.

Nathaniel D. Kramer, Sprung Horn Kramer & Woods, New York City, argued for plaintiffs-appellants.

Hugh D. Finley, Phillips, Moore, Lempio & Finley, San Francisco, Cal., argued for defendants-appellees. With him on the brief was Carlisle M. Moore.

Before MARKEY, Chief Judge, BALDWIN, Senior Circuit Judge, and NIES, Circuit Judge.

MARKEY, Chief Judge.

Spectra Corporation and Subligraphics, S.A. ("Spectra") appeal from summary judgment of the United States District Court for the Northern District of California, # C–86–4447 EFL, that Charles J. Lutz, dba Nova Chrome and Lutz Enterprises, Inc. ("Lutz") do not infringe Spectra's U.S. Patent No. 4,145,300 (the '300 patent) by the use or sale of Coates Reprographic's toner ("Coates toner"). We affirm.

### I. Background

Sublimation dye toners ("toners") are powders which can be used in conjunction with photocopy machines and heat presses to form individualized color images on fabric and metal. Generally, a toner consists of sublimable dyestuff, magnetic particles, and a polymer which binds the dye to the particles.

Spectra's '300 patent discloses and claims a sublimation dye toner consisting of magnetic particles, sublimable dyestuff, a polymer, and wax. The specification states that prior art toners were "limited to [polymers] which [had] a weak affinity for the dyestuffs which they contain, so that the said dyestuffs, under the action of heat, transfer easily from the developer to the surfaces with which they are kept in contact while a copy may be produced." (Specification, column 1, lines 13–18). Spectra discovered that excellent results could be obtained "whatever affinity the polymers may have for the dyestuffs which

they contain, provided a certain amount of a plasticiser or of a wax is added to the coating polymer composition." [1] (*Id.*, column 1, lines 19–23). "Accordingly the present invention relates to developers containing a polymer and at least one sublimable or vaporisable dyestuff ... and characterised in that they consist of particles containing a mixture of at least one polymer with a plasticiser or a wax." (*Id.*, column 1, lines 24–30).

Claim 1, the only independent claim, reads:

A developer in the form of a dry free-flowing powder containing magnetic particles embedded in a mixture of a polymer and between 2.5 and 25% of at least one sublimable or vaporisable dyestuff which, at atmospheric pressure, passes into the vapour state at between 100° and 200° C., and consisting of particles of magnetic material in a mixture of at least one polymer with a wax, which release the vapors of said dyestuff if heated at the sublimation or vaporisation temperature of said dyestuff.

On July 31, 1986 Spectra filed suit against Lutz for patent infringement. Spectra's amended complaint alleged that Lutz had "manufactured and/or used and/or sold" a variety of infringing toners.[2] In March of 1987 Lutz moved for partial summary judgment that the Coates toner does not infringe Spectra's '300 patent. On May 15 and June 5 the district court held hearings on Lutz's motion. Spectra and Lutz agreed that to prove literal infringement Spectra would have to show that the Coates toners contained four components: magnetic particles, sublimation dye, wax, and polymer. The only evidence before the district court on that question was that the Coates toner did not contain a polymer.

On June 19 the district court granted summary judgment of noninfringement

---

**1.** Spectra's appeal brief to this court states: "[t]he patent in suit teaches the use of wax in the coating to overcome any such affinity [problem] and to improve the rheological properties of the toners."

**2.** Count I of Spectra's amended complaint alleged patent infringement arising out of Lutz's sale of dye toners supplied by Edward W. O'Brien dba Powerband Products of Virginia. Count II broadly alleged infringement regarding Spectra's sale of sublimation dye toners "other than those manufactured and sold by O'Brien."

and dismissed without prejudice all claims pertaining to toners other than the Coates toner.[3] Spectra appeals from the summary judgment of noninfringement.

## II. Issue

Whether the district court erred in granting summary judgment of noninfringement.

## III. Opinion

Spectra says the district court erred because: (1) Spectra was denied reasonable discovery which might have provided evidence of polymer in the Coates toners, i.e., evidence of literal infringement; (2) there was a genuine issue of material fact as to infringement under the doctrine of equivalents.

### (1) Discovery

■ Unlike the situation in *Zell v. Inter-Capital Income Sec., Inc.*, 675 F.2d 1041 (9th Cir.1982) (summary judgment premature where discovery cut off by erroneous ruling), Spectra had already conducted 11 months of discovery, and its expert, Dr. Gutknecht, analyzed a sample of the Coates toner, finding no polymer in it. Further, far from curtailing discovery, the district court stated that "[d]iscovery can proceed in the normal fashion" in the two months during which Lutz's summary judgment motion was pending. In sum, the record establishes that Spectra was not deprived of a reasonable opportunity to conduct discovery.[4] Thus, the district court's refusal to further delay a ruling on the motion for summary judgment was not an abuse of discretion. *See Celotex Corp.*, 106 S.Ct. at 2554 ("no serious claim [could] be made that respondent was in any sense 'railroaded' by a premature motion for summary judgment"); *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir.1985) (summary judgment aff'd despite plaintiff's rule 56(f) argument).

The assertion that testing additional samples might possibly uncover polymer in the Coates toner does not establish that the district court abused its discretion. "Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627, 222 USPQ 741, 744 (Fed. Cir.1984) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### (2) Doctrine of Equivalents

■ Spectra fails to pinpoint any genuine issue of material fact.[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'").[6]

---

3. Because most of Lutz's allegedly infringing activities arose out of resale of Coates toners the parties moved for voluntary dismissal without prejudice of all parts of the complaint not relating to Coates toners. That motion was granted.

4. Though Spectra argued the substance of Fed. R.Civ.P. 56(f) in its opposition to summary judgment, it did not file a Rule 56(f) affidavit. Rule 56(f) was specifically intended to deal with the problem of premature motions for summary judgment, and litigants should pursue that avenue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc., v. Pannill Knitting Co.*, 833 F.2d 1560, 1567, 4 USPQ2d 1793, 1799 (Fed. Cir.1987) ("A party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."). We have treated Spectra's argument as a means of supplying guidance to others who may contemplate an appeal in similar circumstances from a grant of summary judgment on the grounds of inadequate discovery.

5. During oral argument, Spectra had no answer when asked to identify a material fact on which there is conflicting evidence and that raises a genuine issue precluding summary judgment. Spectra thus fails to cite any question on which a trial would be required.

6. Though this court has vacated some summary judgments involving the doctrine of equivalents, e.g. *Martin v. Barber*, 755 F.2d 1564, 225 USPQ 233 (Fed.Cir.1985), we have emphasized that "summary judgment is as appropriate in a patent case as in any other where no genuine issue

Spectra says the binding function of the polymer in the '300 patent is performed by the wax in the Coates toner. That fact, if true, is immaterial. Spectra did not patent a binding agent. Rather, as admitted in Spectra's brief, "What distinguishes the toners claimed ... is not polymer, but rather *wax*." (Emphasis in original). Spectra's brief further says, "The patent in suit teaches the use of wax in the coating to overcome [the polymer's] affinity ...," and thus to avoid the "danger that the polymer would have too strong an affinity for the dyestuff, interfering with the release of the dyestuff."[7] The '300 patent broadens the categories of usable polymers by including wax. When the polymer is removed, the wax can no longer perform the function assigned it in the patent, namely the amelioration of the polymer's affinity for the dyestuff. If, as Spectra says, the wax in the Coates toner performs the binding function of the polymer in the claimed invention, there remains nothing in the Coates toner to perform the function of the wax in the claimed invention. Spectra's arguments and authorities dealing with situations in which an element is substituted in the accused product for an element set forth in a claim, and situations in which one element in the accused product performs the functions of two elements set forth in a claim, are thus inapt.

The clear and uncontroverted statements made in the specification of the '300 patent, coupled with Spectra's admission of the function of the wax in the claimed invention, thus preclude Spectra from successfully arguing now that toners without polymer, and without a wax-reduced affinity between polymer and dyestuff, are an equivalent of the invention claimed in the '300 patent. *See Brenner*, 773 F.2d at 307, 227 USPQ at 160–61 (no genuine issue about equivalents because specification of material fact is present and the movant is entitled to judgment as a matter of law." *Brenner v. United States*, 773 F.2d 306, 307, 227 USPQ 159, 160 (Fed.Cir.1985).

"taught away", and because of certain prosecution history).

The question under the doctrine is whether the Coates toner "performs substantially the same function in substantially the same way to obtain the same result" as the claimed toner. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950). The function (dyeing) and the result (dyed material) are broadly the same. The ways in which that function is performed and that result is obtained, however, are entirely distinct. In the claimed invention a polymer binds a dyestuff and wax facilitates the polymer's action. Assuming, *arguendo*, the correctness of Spectra's assertion that the wax in the Coates toner binds the dyestuff, there is in the Coates toner no polymer binding action and no facilitating of that action by the wax. Thus the individual function of the wax in the claimed toner, i.e., solving the "over-affinity" problem of the polymer, is entirely absent and the way in which the dyeing function is performed by the Coates toner is not substantially the same as that in which it is performed by the claimed toner. Under those circumstances, there can be no infringement under the doctrine of equivalents. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–39, 4 USPQ2d 1737, 1739–43 (Fed.Cir.1987) (in banc).

## CONCLUSION

The district court's summary judgment of noninfringement is affirmed.

AFFIRMED.

---

7. Corroborating portions of the specification are quoted *supra* at 1–2.