Lawrence B. LOCKWOOD, Plaintiff,

v.

AMERICAN AIRLINES, INC., Defendant.

Civ. No. 91–1640–E(CM).

United States District Court,
S.D. California.

July 30, 1993.

Robert A. Taylor, Jr., Allan W. Jansen and Corrine M. Freeman of Lyon & Lyon, Costa Mesa, CA, and Douglas E. Olson of Lyon & Lyon, San Diego, CA, for plaintiff.

Don W. Martens, Joseph R. Re and Paul A. Stewart of Knobbe, Martens, Olson & Bear, Newport Beach, CA, Thomas L. Crisman of Johnson & Gibbs and R. Bruce Wark, Dallas, TX, for defendant.

## MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

### BACKGROUND

This is a patent infringement action brought by plaintiff Lockwood against American Airlines, Inc. Lockwood is the inventor and owner of the two patents involved in this suit. Lockwood alleges that American infringes U.S. Patent No. 32, 115 ('115 patent) and U.S. Patent No. 4,567,359 ('359 Patent) by providing its SABREvision system to travel agents.

The Lockwood patents relate to interactive, audiovisual systems and apparatus useful in computerized reservation systems. American's recent enhancement of its computerized "Sabre" reservation system, SABREvision, provides interactive visual presentation of information, e.g. descriptions of resorts, hotels and cruises beyond the traditional scheduling and prices.

### A. The '115 Patent

The '115 patent is entitled "Self–Service Terminal." It claims a self-contained, transportable machine for promoting and dispensing goods and services. The Patent discloses a fully automated, self-service terminal for dispensing voice and video information, goods and printed documents, and for accepting orders and payments directly from customers by coins or credit cards, without the need for a live salesperson. The terminal is installed for direct access by prospective cus-

tomers. It has a video display and a loudspeaker for presenting information to customers, a printer, a goods dispenser, a coin box and credit card reader for accepting payments, and a telephone for communicating with the staff of a remote central station. With the aid of the video display, the customer is able to interact with the system to select the offered goods and services. It was described by Lockwood's patent attorney as "an auto-mated teller machine ... with the addition of a(n) audio-visual display to give information about the product or service sold through the terminal."

Lockwood alleges that American has infringed Claim 11 of the '115 patent.

### B. *The '359 Patent*

The '359 patent claims a collection of similar machines interconnected through a computer network. The machines automatically dispense information, services and products to customers in a self-service fashion. The self-service information and sales terminals contain automation which creates, for example, a "factitious insurance agent" to interactively communicate with prospective customers, to collect customer information and to provide information to customers on various alternative insurance policies. If the customer decides to make a purchase, the terminal accepts the customer's credit card, institutes a credit check and, on approval, dispenses a policy.

Lockwood claims that American has infringed independent Claim 1 and dependent Claims 2, 4 and 7.

### C. *The American SABREvision System*

The SABREvision system is a manually operated system in which a travel agent gathers sales information from a customer either in person or by telephone. The travel agent then uses a computer terminal access schedule, cost and availability information stored in the central Sabre computer. The travel agent may also access a stored library of still photographs of places of interest to travelers such as hotels, restaurants, and cruise ships, as well as maps of countries, cities and airports, and display these still images on the computer terminal screen. The travel agent then gives the information to the customer as if it had been looked up in the agent's library of travel reference books.

If the customer decides to purchase a ticket, the travel agent solicits credit information or accepts cash payment from the customer. If a credit card is used, the travel agent must manually type in the credit information on the keyboard of the agent's computer terminal. Once credit is approved, the Sabre host computer commands a ticket printer at the travel agency to print a ticket which the travel agent delivers to the customer. The SABREvision system accepts no information directly from the customer.

American moves for summary judgment on non-infringement grounds. In short, American's argument is that the Lockwood patents do not cover the SABREvision system because the claims in each patent recite a type of self-contained, self-service computerized vending machine designed to replace travel agents or other sales personnel through advanced automation. In contrast, American argues that the SABREvision system is not self-contained and is not sufficiently automated to replace travel agents. To the contrary, American argues it is an in-office computer system used exclusively by travel agents.

Additionally, American argues that Lockwood is estopped from arguing that the SABREvision system is "equivalent" to that which the patents may cover. It argues that the arguments Lockwood made when prosecuting the patents are inconsistent with the equivalency arguments Lockwood now makes.

Lockwood argues that summary judgment must be denied because there are material issues of fact relating to the definition of several of the terms in the claims.

### DISCUSSION

### I. STANDARD

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party which "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of

proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the burden of proving that there is no genuine issue of material fact and that judgment may be entered as a matter of law. *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). "[A] party opposing a properly supported motion for summary judgment ... 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*citing* Fed.R.Civ.P. 56(e)) (footnotes omitted). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. at 2513.

■ Claim construction is a question of law which may be resolved on summary judgment. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992). The words in a claim should be given their ordinary meaning unless it appears that the inventor used them differently. *See ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1579 (Fed.Cir.1988). It is Lockwood's burden on this motion to come forward with sufficient evidence in support of his proposed claim construction to warrant a trial. *See Anderson,* 477 U.S. at 250–252, 106 S.Ct. at 2511–12; *Intellicall,* 952 F.2d at 1387–88.

## II. ALLEGED INFRINGEMENT OF THE '115 PATENT

### A. Literal Infringement

■ Infringement is found only when each and every limitation of a patent claim is met by the accused product exactly or by a substantial equivalent. *See, e.g. Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934–36 (Fed.Cir.1987).

This court agrees with American that Claim 11 contains several elements which are lacking in the accused SABREvision system.

#### 1) Self–Contained Apparatus

■ The preamble of Claim 11 of the '115 patent recites the claimed invention as a "substantially contained apparatus dimen-sioned to be easily transported." American submits evidence of the prosecution history which indicates that Lockwood specifically added this preamble language to distinguish his invention from a prior art patent, U.S. Pat. No. 3,805,384, which served as the Examiner's principal reference for rejecting Lockwood's broader claims.

The accused SABREvision system does not have any feature to correspond to this limitation. SABREvision is a computer system made up of a multitude of separate apparatuses which are distributed throughout the office space occupied by a travel agency for the convenience of the travel agents. This system is not transportable and is not contained in any kind of housing.

Lockwood argues that, on the contrary, the SABREvision system is self-contained. It argues and submits expert testimony to the effect that "self-contained" means an apparatus or collection of components which includes the material necessary for the apparatus to function on its own. Additionally, it argues that the SABREvision system is easily transportable because the parts are easily transportable and the system can be easily delivered and set up.

Lockwood argues that American can not avoid infringement by simply adding additional computers to the claimed invention, which is the basic apparatus. *See A.B. Dick Co. v. Burroughs Corp.,* 713 F.2d 700, 703 (Fed.Cir.1983). However, this court agrees with American that the essence of the SABREvision is the fact that it is an office network, not a self-contained "customer-oriented" computer such as Lockwood's patent describes.

#### 2) Audio–Visual Means

■ The first limitation following the preamble of Claim 11 requires "an audio-visual means for selectively dispensing information from a plurality of data sources." In its ordinary sense, the word audio-visual connotes the use of both the sense of sound and the sense of sight. *See Webster's Ninth New Collegiate Dictionary.*

Lockwood argues that the term audio-visual includes in its ordinary meaning the use of

either sight or sound, or both. It points to the definition of "audiovisual works" in the Copyrights statute, 17 U.S.C. § 101, which describes them as "works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any. Thus, Lockwood argues that the SABREvision system would still be considered an audio-visual means, even if it doesn't produce sound.

However, this court finds that the use of the term audio-visual in the specification of the '115 patent is wholly consistent with the definition of audio-visual which incorporates both sound and sight. For example, the specification states "a high quality audio-visual travel log can utilize practically all the human senses to motivate and influence a customer to select a particular vacation or destination." Pretty Decl.Exh. A at 8. Additionally, during prosecution of the '115 patent, Lockwood argued the significance of audio capability to distinguish Claim 11 over U.S. Patent No. '759 to Yuris, which had only video capability. He stated, "Yuris does not feature any means to promote the goods or services by audio or audio-visual means." Thus, it is clear that he also drew a distinction between the two terms. The only logical conclusion is that audio-visual was meant to include both audio and visual capability.

In contrast the Lockwood's patent, the SABREvision system relies exclusively on sight, not sound. The SABREvision system has no audio capability, apart from an industry standard "beep" from the personal computer. The beep does not dispense any information. Additionally, SABREvision does not have the means to retrieve and cause to output audio information which is stored on a removable media, as required by the specification. Thus, the system lacks the audio portion of the claim limitation "an audio-visual means for selectively dispensing information."

### 3) *Customer Operated Means*

■ Three limitations of Claim 11 require "customer operated means" within the self-contained, transportable machine. These limitations are:

a) customer operated means for selecting information to be dispensed on said audio-visual means ... Col. 11, lines 28–29.

b) means operated by the customer for selecting at least one item to be dispensed by said electromechanical means ... Col. 12, lines 15–17.

c) means for directing the operation of said audio-visual means, said means operated by the customer ... Col. 12, lines 23–24.

Lockwood argues that a travel agent is a "customer" for purposes of American's business. He argues that American has adapted the software and physical placement of the hardware for a delivery of a higher grade of service by their travel agent customers. In any event, Lockwood argues that the fact that use by a customer is specified in its claim does not limit the patent claim. Rather, it argues that the patent claim relates to an apparatus, and it is irrelevant who uses that apparatus for purposes of determining whether the patent has been infringed.

However, this court finds that SABREvision satisfies none of the three limitations relating to customer operation because it is operated by a travel agent, not a customer. The specification makes clear that the inventors intended the word "customer" to exclude travel agents. In the "Background of the Invention" section, the inventors describe the expensive and cumbersome prior art system of relying upon travel agents to fulfill the needs of customers. Consequently,. the inventors saw a need for "a new device capable of performing the promotion and sales of services such as those commonly dispensed by travel agencies, in a fully automated fashion." Exh. A at 8 (Col. 1, lines 36–40). Their solution to the problem of the high cost of travel agents, was to invent the '115 patent.

Thus, it is clear from the inventor's own description of their invention that the intent was to eliminate the expense of hiring travel agents by replacing them with automated machines. The invention is not a new and improved tool for use by travel agents. Rather, this court agrees with American's assertion that customer operation is a key component of the invention. If this were not

the case, the stated purpose of the invention would be defeated.

### 4) *Means for Accepting Payment*

■ Claim 11 requires that the device include "at least one electromechanical means for accepting payment." The specification of the '115 patent discloses two electromechanical means for accepting payment: a coin box, and a credit card reader.

Lockwood argues that using the computer keyboard for validation of a person's credit is equivalent to using the credit card reader disclosed in the '115 patent for the same purpose, because keyboards are commonly used as a backup in the event the card reader is unable to read the card. Therefore, Lockwood concludes the SABREvision system has at least one electromechanical means for accepting payment.

However, this court finds that the SABREvision system does not have any automated payment means or their equivalents. In the SABREvision system payment is accepted by a travel agent who types the customer's credit card number into a personal computer keyboard. Thus, each means of accepting payment is dependent upon the manual labor of a travel agent.

### B. *Doctrine of Equivalents*

■ This court agrees with defendant that the doctrine of equivalents should not be applied in this case because Lockwood has asserted no equitable facts or circumstances that would justify its application in this case. It notes that application of the doctrine of equivalents is the exception and not the rule. *See Charles Greiner & Co. v. Mari–Med. Mfg., Inc.,* 962 F.2d 1031, 1036 (Fed.Cir. 1992).

■ Even if the doctrine of equivalents had applicability to this case, to prove infringement, Lockwood must establish that the accused device performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed invention. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d at 934. If the accused device does not have corresponding features equivalent to each claim limitation, there can be no infringement as a matter of

law. *Spectra Corp. v. Lutz,* 839 F.2d 1579, 1582 (Fed.Cir.1988).

Lockwood cannot meet its burden in this case because of the missing elements in the claims previously discussed.

■ Furthermore, the doctrine of prosecution history estoppel limits the application of the doctrine of equivalents in this case. Prosecution history estoppel forbids the patentee's reliance on the doctrine of equivalents in litigation if that reliance would be inconsistent with amendments or arguments the patentee made before the patent examiner. *See, e.g. Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452 (Fed.Cir. 1985).

■ Lockwood's amendments and arguments to the patent examiner prevent Lockwood from now contending that any of the claims of the '115 patent cover the accused SABREvision system. Defendant submits evidence that Lockwood's claims were significantly narrowed during prosecution of the original and reissued '115 patent in order to overcome the examiner's rejections based on earlier automated ticketing devices and computer reservation systems. For example, the Examiner rejected Claim 9 of the original '115 application for obviousness over U.S. Patent No. 3,705,384 to Wahlberg. Wahlberg disclosed an automated, multiple-transaction business machine for applications, among others, of displaying flight schedules and dispensing airline tickets. Lockwood responded to this rejection by amending the preamble of Claim 9 (the same preamble that is now contained in Claim 11 of the '115 patent). He changed the language: "An apparatus for automatically dispensing goods and services to a customer which comprises" to read:

A substantially self-contained apparatus dimensioned to be easily transported and installed at a commercial location comprising ...

In an argument to overcome the rejection of Claim 9 and convince the Examiner to allow the amended claim, Lockwood stated that the Wahlberg patent describes

a complete system, being more in the nature of a computer system than a product. Applicant's device, on the other hand, is a free standing self-contained unit which can be moved from location to location.

Thus, the SABREvision system is precisely what Lockwood said his invention is not—"a complete system being more in the nature of a computer system than a product." Lockwood's statements to the Examiner prevents him from now arguing the SABREvision system is equivalent to his claimed invention.

In opposition, Lockwood asserts the same arguments that he did on the direct infringement issue. He disputes American's definitions of the terms in the claim and argues that according to his definitions, American has infringed the patents both directly and under the doctrine of equivalents.

### III. ALLEGED INFRINGEMENT OF THE '359 PATENT

■ Like the '115 patent, the claims of the '359 patent each contain several limitations which limit the claimed invention to customer operated devices. For example, Claim 1 requires:

1. "audio-visual" means for interacting with a customer.

2. means for storing a sequence of audio and video information to be selectively transmitted to a customer.

3. customer operated input means for gathering information from a customer.

4. means for storing information and orders input by a customer.

This court makes similar findings regarding non-infringement to the ones it made with regard to the '115 patent. The SABREvision system does not infringe the '359 patent because it is not equipped for customer use and lacks the required audio-visual means.

■ Similarly, the doctrine of equivalents should not be applied in this case because there are no equitable facts which create such a need. Furthermore, Lockwood's contrary arguments during prosecution of the patent estop him from now contending

that the accused SABREvision system infringes the '359 patent.

For example, American submits evidence that during the prosecution of the '359 patent, Lockwood argued for allowance of his patent on the basis that it provided a level of automation which was sufficient to eliminate the need for live salespersons. American argues that since systems with the level of automation of the SABREvision system existed prior to the '359 patent, Lockwood had to differentiate the '359 patent on this basis. Thus, it argues that he cannot now claim that systems like the SABREvision system which do not completely replace the salesperson's role are infringing.

Lockwood is also prevented from arguing that the travel agents who use the system are customers within the meaning of his patent claims. Defendant submits evidence that when explaining his patent during prosecution, Lockwood drew distinctions between travel agents and customers. He envisioned the system as one which allows insurance companies or travel agents to interact with customers utilizing the various components of the system to create fictitious salespersons.

■ Additionally, this court notes that the specification states:

an additional object of this invention is to provide such service by means of simulated personal interview with a factitious agent created by audio-visual devices from pre-recorded sound, images and synthesized data ...

Thus, the self-service terminal of the '359 patent must provide for movie-like quality audiovisual presentations, including both motion pictures and audio capabilities, in order to create a simulated personal interview. However, the SABREvision does not provide this type of presentation because its video images are only still photographs without sound.

In opposition, Lockwood repeats his arguments concerning the definitions of "customers" and "audio-visual." He asserts that travel agents are American's "customer" for purposes of the infringement issue. Additionally, he argues that the SABREvision system has the capability to store a sequence

of audio-video information to be selectively transmitted to a customer. He argues that to be capable of infringing an accused device need only be capable of operating in an infringing mode. *Intel. Corp. v. U.S. Intern. Trade Com'n,* 946 F.2d 821, 832 (Fed.Cir. 1991).

 However, in order for the SABREvision system to infringe the Lockwood patents based on its mere capability to store audio information, it would have to perform the identical function claimed. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d at 934 (no infringement where defendant's machine was capable of performing the claimed function, but was not actually programmed to do so). Since it is undisputed that the SABREvision does not perform the identical function of storing audio information, there is no infringement.

### CONCLUSION

The essence of Lockwood's opposition is that there are disputed issues of material fact regarding the terms in the claimed patents. However, this court agrees with defendant that there is no indication that Lockwood intended the terms to mean anything different than their ordinary meaning.

 The claims of a patent must be interpreted in light of the specification and prosecution history. *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1966). This court finds that the opinion testimony relied on by Lockwood is inconsistent with the specification and prosecution history of the patents. Lockwood's witnesses do not explain how anything in the patents or their file histories led them to draw any conclusions regarding the meaning of the relevant claim language. In contrast, defendant has convincingly argued that based on the common meaning of terms like the word "customer", and the prosecution history of the Lockwood patents, the SABREvision system does not infringe the Lockwood patents.

### ORDER

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby grants defendant's motion for summary judgment on non-infringement grounds.