SAGE PRODUCTS, INC., Plaintiff,

v.

DEVON INDUSTRIES, INC., Defendant.

SAGE PRODUCTS, INC., Plaintiff,

v.

BECTON, DICKINSON AND CO., Defendant.

Nos. CV 93–2403 RG (CTx), CV 93–2404 RG (CTx).

United States District Court, C.D. California.

Sept. 13, 1994.

Steven J. Kirschner, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, CA,

William T. Cahill, Pope, Cahill & Devine, William M. Lee, Jr., Paul A. Maddock, Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, Chicago, IL, for plaintiff.

Kenneth H. Ohriner, David A. Randall, Jerome T. Tao, Lyon & Lyon, A Partnership Including Robert C. Weiss, Los Angeles, CA, for defendant.

## MEMORANDUM & ORDER

GADBOIS, District Judge.

### I. *Background*

Sage Products, Inc. ("Sage") produces "sharps disposal containers," receptacles for safe disposal of used syringes, scalpels, and other hazardous medical waste. Sage contends that defendants Devon Industries, Inc. ("Devon") (CV 93–2403) and Becton Dickinson and Co. ("B & D") (CV 93–2404), infringe two of Sage's patents. Devon counterclaims, contending that Sage infringes one of its patents.

### A. *The Patents*

#### 1. *Sage's U.S. Patent No. 4,375,849*

Sage owns U.S. Patent No. 4,375,849 ('849), which describes a needle unwinder, a simple device used to unscrew used hypodermic needles from syringe bodies. Sage's unwinder holds the needle stationary while medical personnel turn the syringe (typically a clear plastic body and plunger) by hand to separate it from the needle. The needle then falls into the sharps container. To ensure that the needles do not fall out of the container, the invention describes a door, which pivots on the container top and seals used needles inside the container. *See* Figure 1.

Devon has produced needle unwinders since 1986. Before 1992, when Sage filed this lawsuit, Devon's unwinders used a stepped slot or opening. *See* Figure 2. After receiving the complaint, Devon changed the needle unwinder slot design from a stepped slot to a smooth-sided angled slot. *See* Figure 3. Due to delays required by the manufacturing changeover, Devon continued to sell containers with the original stepped design.

FIGURE 1
Sage's '849 Patent

FIGURE 2

FIGURE 3

Like Sage's '849 unwinder, Devon's unwinders have doors which cover the unwinder slots to ensure that needles do not fall out of the container. Devon makes containers with a hinged door and a laterally sliding door.

2. *Sage's U.S. Patent No. 4,779,728.*

Sage also owns U.S. Patent No. 4,779,728 ('728). Figure 4 shows the '728 patent's preferred embodiment. By placing constrictions above and below the entry slot, Sage sought to minimize the risk of hazardous medical waste disposal. The constrictions not only prevent those disposing of hazardous waste from reaching inside the container but also help prevent waste from falling out of the container if it tips over.

First Constriction

Elongated Slot

Closure

Second Constriction

Hollow Upstanding
Container Body

FIGURE 4

Sage alleges that Devon's tortuous path containers, shown in Figure 5, infringe the '728 patent. Devon's containers have two interior barrier walls, which together prevent hands from reaching inside the container body.

**Devon Tortuous Path Container**

**FIGURE 5**

Sage also alleges that two of B & D's counterbalanced door disposal containers infringe the '728 patent. Like Sage's '728 container, the B & D containers prevent persons from reaching inside and help keep waste inside the container. *See* Figures 6–7.

Open Configuration

Insert Sharps Into Door

Closed Configuration

Sharps Fall Into Base Container

FIGURE 6

Counterbalanced Door

Container Top

Base Container

Open Configuration

Insert Sharps Into Door

Closed Configuration

Sharps Fall Into Base Container

FIGURE 7

3. *Devon's U.S. Patent No. 4,315,592.*

Devon owns U.S. Patent No. 4,315,592 ("'592 Patent"), which describes a sharps disposal container. *See* Figure 8.

Devon contends that Sage's "3–gallon" container, also known as the "always open" container, infringes the '592 patent. Figure 4, *supra*, shows the always-open container.

U.S. Patent No. 4,315,592

FIGURE 8

B. *The Instant Motions.*

Devon now moves for summary judgment (1) that two of its unwinders do not infringe the '849 patent; (2) that its tortuous path container does not infringe the '728 patent; and (3) that Sage is not entitled pre-lawsuit damages under 35 U.S.C. § 287.

Sage (1) moves to amend responses to requests for admissions, and (2) moves for

summary judgment that its "always open" containers do not infringe the '592 patent.

B & D moves for summary judgment that its counterbalanced door containers do not infringe the '728 patent.

## II. *Analysis*

### A. *Legal Standards*

#### 1. *Standard for Summary Judgment of Non-infringement*

■ In a patent case, as in any other, summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed.Cir. 1989); F.R.Civ.P. 56(c). To prevail, the movant must demonstrate that no reasonable trier of fact could conclude that the accused devices infringe.

■ Ordinarily, courts first determine the scope of the claims, which is a question of law. *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1192 (Fed.Cir.1994); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed.Cir. 1991). Next, courts determine whether any reasonable trier of fact could conclude that the accused device infringes the claims, as interpreted by the court. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed.Cir.1985) (en banc). In doing so, "the district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor." *Id.*

#### 2. *Standards for Claim Interpretation*

"The terms of a claim will be given their ordinary meaning, unless it appears that the inventor used them differently." *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1579 (Fed.Cir.1988). If claim interpretation is in dispute, "resort should be made to the claims at issue, the specification, and the prosecution history." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed.Cir.1985).

#### 3. *Standards for Infringement*

■ An accused device literally infringes only where it incorporates every ele-

ment of a claim. *Hi–Life Products, Inc. v. American Nat'l Water–Mattress Corp.*, 842 F.2d 323, 325 (Fed.Cir.1988). Literal infringement presents a question of *fact*. *Townsend Eng'g Co. v. HiTec Co.*, 829 F.2d 1086, 1089 (Fed.Cir.1987).

■ An accused device infringes under the doctrine of equivalents if both it and the patented device perform substantially the same function in substantially the same way to accomplish substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). However,

> [a]pplication of the doctrine of equivalents is the exception, ... not the rule, for if the public comes to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second proving of every infringement charge, regularly available to extend protection beyond the scope of the claims, then claims will cease to serve their intended purpose.

*Charles Greiner & Co. v. Mari–Med Mfg., Inc.*, 962 F.2d 1031, 1036 (Fed.Cir.1992) (quoting *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed.Cir.1991)). Therefore, "[t]he doctrine of equivalents cannot enlarge the scope of the claims." *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 398 (Fed.Cir.1994).

■ Like infringement generally, infringement under the doctrine of equivalents is a factual determination. *Graver Tank*, 339 U.S. at 609, 70 S.Ct. at 856–57; *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed.Cir.1991); *Martin v. Barber*, 755 F.2d 1564, 1568 (Fed.Cir.1985). The *range* of equivalents afforded to a patent claim is also a question of fact. *Martin*, 755 F.2d at 1568. Although some courts have expressed reservations about granting summary judgment of non-infringement under the doctrine of equivalents,[1] summary judgment is appropriate when no reasonable jury could conclude that the accused device infringes. *See, e.g., Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 n. 6 (Fed.Cir.1988) (finding that district court

---

1. *See, e.g., Martin v. Barber*, 755 F.2d 1564, 1568 (Fed.Cir.1985); *Almor Corp. v. Madix Inc.*, 3 U.S.P.Q.2d 1876, 1881 n. 5, 1987 WL 20226 (M.D.Ala.1987).

did not err in granting summary judgment of non-infringement); *London v. Carson Pirie Scott & Co.*, 18 U.S.P.Q.2d 1761, 1991 WL 1700 (N.D.Ill.1991), *aff'd*, 946 F.2d 1534 (Fed. Cir.1991); *Tarel Seven Design, Inc. v. Magni Group Inc.*, 16 U.S.P.Q.2d 1952, 1955, 1990 WL 118290 (C.D.Cal.1990); *Jonsson v. Stanley Works*, 711 F.Supp. 1395, 1407 (N.D.Ohio 1989), *aff'd*, 903 F.2d 812 (Fed.Cir.1990) (granting summary judgment of non-infringement notwithstanding the patentee's assertion that the doctrine of equivalents applied).

### B. *Motions re: Needle Unwinders—'849 Patent*

#### 1. *Claim interpretation*

■ The '849 patent has two independent claims, 1 and 10. Claim 1 reads:

1. A needle removal and disposal device for detaching single or double-ended sampling needles which are thread engaged to a syringe body and storing detached sampling needles, said device comprising;

storage container means;

cap means associated with said storage container means, said cap means having a plate means with slot means opening therethrough, said slot means including integral wall means depending into said storage container means, entry port means and a plurality of stepped notches each having a different gap dimension for accommodating different sized needle hub portions; and

closure means pivotably associated with said plate means and being movable with respect to said slot means for controlling access thereto;

．　　．　　．　　．　　．

Claim 10 reads:

10. A needle removal and disposal device for use with single or double-ended sampling needles having hub portions thread-engaging a syringe at the hub portion, said device comprising;

cap means having a plate means with slot means opening therethrough, said slot means including entry port means and a plurality of stepped notches, each notch having a different notch gap dimension permitting engagement with different sized needle hub portions, said slot means further including depending wall means integral with said plate means,

movable closure means pivotably associating with said cap means at pivot means thereof, said movable closure means being selectively movable between an open access and closed access position with respect to said slot means.

storage container means, associating with said cap means, said slot means opening to said storage container means, and said wall means depending into said storage container means,

．　　．　　．　　．　　．

Sage argues that "plurality of stepped notches, each having a different gap dimension for accommodating different sized needle hub[s]," means *any* number of stepped notches, including an *infinite* plurality of stepped notches. Jambor Decl. ¶ 10.

This Court rejects Sage's exercise in semantics. By encompassing an infinite number of *infinitesimally small* notches, Sage's interpretation improperly eliminates the limitation entirely. If the inventor intended to claim a smooth-edged angled notch, he could have done so. Instead, he drafted a claim requiring stepped notches.[2]

#### 2. *Infringement*

##### (a) *Devon's Smooth–Sided Angled Slot Unwinder*

###### (i) *Literal Infringement.*

■ No reasonable jury could conclude that the flat, sloped surface of Devon's

---

2. Sage does not cite any part of the specification or prosecution history that supports its interpretation, and Jambor's declaration does not preclude summary judgment on this issue. *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643 (Fed.Cir.1987).

Devon contends that the "slot means . . ." and "closure means . . ." elements are means plus function elements, and thus must be interpreted under 35 U.S.C. § 112(6). Sage disagrees, but the dispute is insignificant. Because this Court finds that Devon does not infringe, as a matter of law, under either interpretation, this Court assumes that § 112(6) does not apply.

smooth-sided angled slot unwinder has a discrete number of stepped notches. Therefore, this Court finds that Devon's angled slot unwinder does not, as a matter of law, literally infringe the '849 patent.

### (ii) *Doctrine of Equivalents.*

■ To be entitled to summary judgment, Devon must demonstrate that no reasonable jury could find that Devon's smooth-sided unwinders perform the same function in the same way and achieve the same result as Sage's '849 patent. However, "a court may not, under the guise of applying the doctrine of equivalents, erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed.Cir.1987). Holding Devon liable under the doctrine of equivalents would erase the limitation describing a "plurality of stepped notches." Consequently, this Court finds, as a matter of law, that Devon's smooth-sided unwinder does not infringe the '849 patent.[3]

### (b) *Devon's Unwinders With Linearly Moving Doors*

■ Devon contends that four models of its containers[4] do not infringe '849 claims 1 and 10 because they do not have a "closure means *pivotably associated*" with the rest of the unwinder, but have laterally-sliding rectangular doors instead. This Court agrees with Devon. Translation is not rotation. No reasonable jury could find that Devon's containers infringe without erasing "pivotably" from the claims. Therefore, this Court GRANTS Devon's motion for summary judgment of non-infringement of the '849 patent.

### C. *Motions re: Disposal Containers—'728 Patent*

Sage's '728 patent has only one independent claim, claim 1:

3. Sage asks this Court to give the '849 only a fairly broad range of equivalents. This Court finds that regardless of the range of equivalents, Devon does not infringe.

4. Reorder Nos. 4801, 4802, 4804, and 4820.

5. Devon contends that this limitation is a "means plus function" element and, therefore, must be

1. A disposal container comprising:

 (a) a hollow upstanding container body,

 (b) an elongated slot at the top of the container body for permitting access to the interior of the container body,

 (c) barrier means disposed adjacent said slot for restricting access to the interior of said container body, at least a portion of said barrier means comprising

 i. a first constriction extending over said slot, and

 ii. a complimentary second constriction extending beneath said slot, and

 (d) a closure disposed adjacent said slot.

### 1. *Claim interpretation*

This Court gives the slot location—"at the top of the container body"—its ordinary meaning: "the highest point, level, or part of." *Webster's New Collegiate Dictionary* (1973). Nothing suggests that the '728 patent intended to define "top" differently. Similarly, this Court gives the constriction locations—"extending over said slot" and "extending beneath said slot"—their ordinary meanings: *"above* the slot", and *"below* the slot", respectively. "Constriction" means that which "narrows, stop[s], or inhibit[s]", *Webster's*,[5] and the closure must be "adjacent" to—"next to or contiguous to"—the slot.[6]

### 2. *Infringement*

### (a) *Sage v. Devon*

### (i) *Literal Infringement.*

■ Sage contends that a reasonable jury could find that Devon's containers literally infringe, as shown in Figure 9, *infra.* Unfortunately for Sage, given the proper interpretation of the location of the slot and

interpreted under § 112(6). This Court need not resolve this issue because Devon is entitled to summary judgment even if, as this Court assumes, § 112(6) does *not* apply.

6. Sage does not cite anything in the specification or prosecution history suggesting that this Court misinterprets these terms.

the container body, *supra,* no reasonable jury could conclude that the elongated slot in Figure 9 is "at the highest part of" the container body. Devon's container body obviously extends *above* the elongated slot. Moreover, no reasonable jury could conclude that the closure is adjacent to the elongated slot—it obviously is *above* it. Therefore, this Court concludes that Devon does not, as a matter of law, literally infringe the '728 patent.

First Constriction

Closure

Hollow Upstanding
Container Body

Second Constriction

Elongated Slot

Literal Infringement/Doctrine of Equivalents
Sage's Primary Infringement Interpretation

FIGURE 9

### (ii) Doctrine of Equivalents [7]

■ Sage contends that a reasonable trier of fact could view Devon's containers in four different ways and construe them as infringing under the doctrine of equivalents.

*Sage's Primary Interpretation.* Sage first argues that a reasonable jury could find infringement by equivalents under Sage's primary interpretation. *See* Figure 9, *supra*. This Court disagrees, because Sage's interpretation nullifies several express claim limitations: The slot must be at the *top* of the container, and the closure must be *adjacent* to the slot. They are not.[8]

*Sage's First Alternative Interpretation.* Sage proposes an alternative interpretation, shown in Figure 10, *infra*. As is obvious from Figure 10, however, Devon's first and second constrictions are *below* the slot. Thus, this interpretation disregards the express limitations recited in the claims: The first constriction must extend *over* the slot, and the second constriction must extend *beneath* the slot.

---

**7.** Although this Court believes that a reasonable trier of fact would *necessarily conclude* that the '728 patent is entitled to only a narrow range of equivalents, this analysis assumes that the patent would be entitled to a broad range of equivalents.

**8.** Moreover, no reasonable jury could find that Devon's constrictions perform the same function in the same way and achieves the same result as the constrictions in Sage's '728 patent. The constrictions perform different functions. Sage's constrictions impede access to the slot itself, as well as the inside of the container. Devon's constrictions do not limit access to the slot, but rather limit penetration of a hand *already inside* the container.

First Constriction

Closure

Elongated Slot

Hollow Upstanding
Container Body

Second Constriction

Doctrine of Equivalents
Sage's First Alternative Infringement Interpretation

FIGURE 10

*Sage's Second Alternative Infringement Interpretation.* Figure 11 shows Sage's second alternative infringement interpretation, which a reasonable trier of fact would necessarily reject for the reasons it would reject Sage's primary interpretation and first alternative interpretation—the elongated slot is not at the top of the container body, the closure is not adjacent to the slot, and both constrictions are inside the container body.

**Doctrine of Equivalents**
**Sage's Second Alternative Infringement Interpretation**

**FIGURE 11**

---

*Sage's Third Infringement Interpretation.* Sage's third alternative infringement interpretation, shown in Figure 12, *infra,* is the most plausible. In this interpretation, the elongated slot is at the top of the container; the first constriction is above the slot, and the second constriction is below the elongated slot. Thus, this interpretation does not have the deficiencies fatal to Sage's other interpretations.[9]

**9.** Devon incorrectly argues that a single element cannot be equivalent to two elements in a claim. In fact, "[t]he doctrine of equivalents does not require a one-to-one correspondence between components of the accused device and the claimed invention." *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.,* 16 F.3d 394, 398 (Fed. Cir.1994).

Devon argues that its closure is not a "constriction" because it is hinged, and can easily be pushed back such that it does not impede access to the slot. *See* Figure 12. A moment of experimentation with the physical exhibits proves Devon correct. Because the closure does not impede access to the slot, a reasonable jury will necessarily find that Devon does not infringe under this interpretation.

No reasonable trier of fact could conclude that Devon's containers infringe the '728 patent, either literally or through the doctrine of equivalents. Therefore, this Court GRANTS Devon's motion for summary judgment of non-infringement of the '728 patent.

First Constriction

Closure

26c
26d
26
29b
Elongated Slot
27
25
23a
26a
23
28
26b
41
31
30
Second Constriction
40
IV
Hollow Upstanding
42
56
Container Body
21
60
51
54
16
53
17
52
15
22
52
52
57
22
10
18
100a
IV

Doctrine of Equivalents
Sage's Third Alternative Infringement Interpretation

FIGURE 12

**738**

*(a) Sage v. B & D.*

■ B & D relies heavily upon the prior art, arguing that any interpretation covering their devices would necessarily cover prior art. *Conroy,* 14 F.3d at 1576; *Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 842 (Fed.Cir.1991). Because B & D relies on prior art, this Court need not conduct the ordinary two-part interpretation/infringement analysis. Instead,

> to simplify analysis and bring the issue onto familiar turf, it may be helpful to conceptualize the limitation on the scope of equivalents by visualizing a *hypothetical* patent claim, sufficient in scope to *literally* cover the accused product. The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art. If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents. If the hypothetical claim could have been allowed, then *prior art* is not a bar to infringement under the doctrine of equivalents.

*Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 684 (Fed.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). Under *Wilson Sporting Goods,* the *patentee* bears the burden of proving that its interpretation would not ensnare prior art. *Id.* at 685. "The specific question ... is whether the patentee has proved that a hypothetical claim, similar to [the claim at issue] but broad enough to literally cover the accused device, could have

been patentable." *Id.* This is a question of law. *Id.* at 683.

■ In the instant case, B & D contends that if '728 claim 1 covers the B & D containers, it also encompasses the Whelan letter-box, patented in 1891.[10] Whelan sought to "provide a simple and secure street letter-box for the reception of letters and mail matter, which, while permitting the deposit of the letter or package, precludes the removal of the same except ... under the control of the mail carrier." U.S. Patent No. 449,149 col. 1. The letter box consists of a base container and a cylindrical door, one third of which is cut away to form an opening slot. *See* Figure 13, *infra.*

B & D is entitled to summary judgment only if each and every element of the hypothetical claim is present in Whelan. *Westvaco Corp. v. International Paper Co.,* 991 F.2d 735, 739 (Fed.Cir.1993); *Continental Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264 (Fed.Cir.1991).

Sage argues that Whelan does not describe "a disposal container." This contention is meritless. Those using Whelan and those using Becton's containers both "dispose" of what they deposit; neither expects to retrieve their deposits. Sage also contends that the Whelan letter-box does not have a "closure adjacent said slot." This argument is also meritless. If the Becton containers have such a closure, so does Whelan. Therefore, this Court concludes that any claim covering B & D's containers would ensnare Whelan, and GRANTS B & D's motion for summary judgment of non-infringement.[11]

---

**10.** A reference is from an analogous art if *either* it is "within the field of the inventor's endeavor" or if it "is reasonably pertinent to the particular problem with which the inventor was involved." *In re Deminski,* 796 F.2d 436, 442 (Fed.Cir. 1986). The Whelan container easily meets this test. Whelan was concerned with a container which could receive deposits, yet prevent persons from reaching inside. Because this is precisely

the task to which the '728 patent is directed, Whelan is from analogous art.

**11.** This Court also believes that if the '728 patent covers B & D's containers, it also covers anyone using the Young garbage can closure, patented in 1917.

Cylindrical Door

Base Container

Insert Mail Into Door

Open Configuration

Closed Configuration

Mail Falls Into Base Container

FIGURE 13

D. *Motion re: Disposal Container—'592 Patent*

The '592 patent has one independent claim:

A receptacle for receiving expendable items, said receptacle including a container, a first baffle generally closing the top of said container and defining a first opening through said first baffle of such size and shape to receive said expendable items therethrough, a second baffle disposed below said first baffle, said ·second baffle defining a second opening therethrough of such size and shape to receive said expendable items, said second opening being horizontally displaced from said first opening, said first baffle and said second baffle defining a space therebetween sufficient to allow said expendable items to pass through said first opening, between said first baffle and said second baffle, and through said second opening to be received within said container.

'592 Claim 1.

### 1. *Claim Interpretation*

#### (a) *"Baffle"*

Sage argues that "baffles" are flaps confined to a single plane, and thus cannot have any curvature. Sage relies on the specification and prosecution history, in which the inventor used the word "flap" at times. *See Tandon Corp. v. U.S. International Trade Commission*, 831 F.2d 1017, 1021 (Fed.Cir. 1987) (noting that claims are to be interpreted in light of the specification, prosecution, prior art and other claims).

Devon disagrees, citing *Webster's Dictionary*, which defines baffle as "something for deflecting, checking, or otherwise regulating flow; a plate or wall for deflecting gases or other fluids ..." *Webster's Third New Int'l Dictionary* at 162 (1981). Moreover, Devon argues that if it had meant "flap" it would have said so in the claims. This Court need not resolve this dispute, as Sage does not infringe under either definition. Therefore, this Court assumes that "baffle" is not limited to flat flaps, but rather describes "something for deflecting, checking, or otherwise regulating flow." *See Howes*, 814 F.2d at 645.

#### (b) *"Second Opening"*

The claim describes a "second baffle defining a second opening therethrough." This Court gives "through" its ordinary meaning: "into [the baffle] at one side or point and out at another and out at another, especially the opposite side of." *Webster's.* Thus, the opening in the second baffle goes "through" the baffle as a nail goes through a board. *Id.*

### 2. *Infringement*

#### (a) *Literal Infringement*

Devon contends that the always-open Sage container has first and second baffles as shown in Figure 14, below. Even assuming that the second cowl might be a baffle, no reasonable jury could find an opening "therethrough." No opening goes "into [the second baffle] at one side or point and out at another, especially the opposite side of [the baffle]."

Moreover, no reasonable trier of fact could find that the openings are both horizontally and vertically displaced such that they define "a space therebetween sufficient to allow said expendable items to pass through said first opening, between said first baffle and said second baffle, and through said second opening to be received within said container." The openings are contiguous, such that a needle dropped at point "B" in Figure 14 would not pass *between* the baffles, but rather would drop immediately into the container.

#### (b) *Doctrine of Equivalents*

Sage does not infringe under the doctrine of equivalents because its lower cowls do not have an opening through them, and because the "openings" are contiguous; thus Sage's containers do not perform the same function, in the same way, with the same result, as the '592 patent.

The '592 patent seeks to ensure "that items within the container will not be contacted by a person depositing another item into the container," by placing an opening in the second baffle below and horizontally offset from the opening in the first baffle. Therefore, fingers entering the opening in the first baffle are some distance from the

opening in the second baffle, and are protected.[12]

Like the '592 patent, Sage's containers seek to prevent persons depositing sharps from touching the waste inside. However, Sage accomplishes the task in a markedly different way. The openings are contiguous—thus, Sage protects the user not with the *distance* between the two openings, but with the *angle* between them. A person reaching into the always-open container must curl his hand, limiting his access to the interior of the container.

Sage's motion for summary judgment of non-infringement of the '592 patent is therefore GRANTED.[13]

**First Baffle**

**First Opening**

**Second Baffle**

**Second Opening**

FIGURE 14

E. *Sage's Motion to Amend Answers to Requests for Admissions*

12. *See* '592 Patent abstract ("two baffles hav[e] openings off-set from each other so that items within the container will not be contacted by a person depositing another item into the container.").

13. Devon argues that the '592 patent is a pioneer invention and is, therefore, entitled to a broad

 Devon argues that Sage's 8500 series products, which Sage has sold for some range of equivalents. This Court need not labor over the range of equivalents permitted, because even if the '592 patent is entitled to a broad range, no reasonable jury could find that Sage's always-open containers perform the same function, in the same way, with the same result as the '592 patent.

time, incorporate the '849 patent yet are not labelled as such. If Sage sold products incorporating the '849 patent without giving the public notice that the invention was patented, this Court should deny pre-lawsuit damages under 35 U.S.C. § 287. Devon relies heavily on Sage's responses to requests for admissions,[14] which Sage now moves to amend. As Sage notes, amendment does not turn on whether it has a good excuse, but on whether

> the presentation of the merits of the action will be served thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits.

F.R.Civ.P. 36(b).

Sage meets these requirements. If this Court denies Sage's motion to amend and adopts Devon's interpretation of Sage's responses, Sage will be denied an opportunity to litigate the underlying merits of its claim. Sage thus satisfies the first prong of the Rule 36(b) test.

Devon's attempts to demonstrate that amendment will prejudice it are comic at best. First, Devon argues that it can no longer conduct discovery on the issue of whether the 8500 series incorporates the '849 invention, and that, even if it could, this issue would require an exhaustive mini-trial. Only a few pages later, Devon suggests that allowing amendment has no prejudicial effect at all, contending that it is entitled to summary judgement even if Sage amends its responses.

This Court therefore GRANTS Sage's motion to amend, and analyzes Devon's motion for summary judgment using the amended responses.

### F. Summary Judgment For Failure to Mark

Devon argues that it is entitled to summary judgment on the marking issue because Hanifl, the inventor, testified that Sage's 8500 containers are covered by the 8500 patent. In his affidavit, Hanifl repudiates his prior testimony, opining that "[t]he closure member of the 8500 series products does not close or deny access to the slot of the needle unwinder." Although Devon dismisses this change in testimony as a mere "sham" entitled to no weight, an even cursory inspection of the containers displays otherwise. Therefore, this Court DENIES Devon's motion for summary judgment for failure to mark.

### III. Conclusion

The patents at issue describe extremely simple devices in simple, straightforward terms. They are easy to interpret, and should have been easy to draft. Notwithstanding the claims' clarity, both Sage and Devon ask this Court to disregard several limitations in their respective patents.

If this Court obliged, "the public [would] come[ ] to believe (or fear) that the language of patent claims can never be relied on, and that the doctrine of equivalents is simply the second proving of every infringement charge, regularly available to extend protection beyond the scope of the claims. [C]laims [would] cease to serve their intended purpose." *Charles Greiner & Co.*, 962 F.2d at 1036. If the inventors wished to have more

---

14. These include the following:
*REQUEST FOR ADMISSION NO. 40*
 Sage has sold containers having the needle unwinder claimed in the '849 patent without marking Patent No. 4,375,849 on the containers.
*RESPONSE:* Admitted only insofar as, presently advised, it appears that some containers have been thus sold. Not all containers have been thus sold, since most have been marked with the patent number.
*REQUEST FOR ADMISSION NO. 42*
 The Sage container marked as Exhibit 9 (a Sage container designated by product or model no. 8511–1) is covered by the '849 patent.

*RESPONSE:* Admitted so long as the container has an unwinder. Many of such containers have not, in the past, included unwinders.
*REQUEST FOR ADMISSION NO. 105*
 The invention claimed in the '849 patent has been included on the following Sage products since their initial Sales: 8500–1; 8500–0–1; 8501–1; 8501–0–1; 8502–1; 8502–0–1; 8503–1; 8503–0–1; 8510–1; 8510–0–1; 8511–0–1; 8512–1; 8512–0–1; 8513–0–1;
*RESPONSE:* Admitted, to the extent that a stepped unwinder has been included, but otherwise denied.

expansive claims, they should have drafted them.

This Court rules as follows:

1. *Sage v. Devon:*

 a. Devon's motion for summary judgment of non-infringement of the '849 patent is GRANTED.

 b. Devon's motion for summary judgment of non-infringement of the '728 patent is GRANTED.

 c. Sage's motion for summary judgment of non-infringement of the '592 patent is GRANTED.

 d. Sage's motion to amend responses to requests for admissions is GRANTED.

 e. Devon's motion to deny pre-lawsuit damages for failure to mark is DENIED.

2. *Sage v. B & D:* B & D's motion for summary judgment of non-infringement of the '728 patent is GRANTED.

IT IS SO ORDERED.